CROMWELL, *et al. vs.* OWINGS—JUNE 1826.

Where real and personal property were taken under a *fi. fa.* and the sheriff returned the writ "laid as per schedule, and the goods and chattels replevied," and the replevin was by a third party—On motion *a venditioni exponas* was issued to the sheriff for the sale of the personal as well as the real estate.

Goods taken under an execution cannot be replevied out of the officer's hands, either by a stranger, or by the defendant in the judgment, and this whether such goods, when taken, were in the possession of the defendant or not. In either case they are considered as in *custodia legis.*

After goods are sold under an execution, and are in the hands of the purchaser, they may be replevied by the true owner, and an action for damages maintained by him against the officer.

Replevin in this state is the usual remedy to enable an owner to recover personal property from the possession of another, whether that possession be tortious or not; but to this there is an exception as to such goods as are in the custody of the law, or as have been taken by replevin from the owner by the party in possession.

At common law it is a contempt of the court issuing an execution, to replevy property taken under it.

FIERI FACIAS issued on a decree rendered in this court at June term 1823, returnable at December term 1823. The *fieri*

*facias* was laid on certain tracts of land, and goods and chattels; and the goods and chattels were replevied and taken out of the possession of the sheriff, under a writ of replevin issued out of *Baltimore* county court, at the instance of *Jacob Holderman,* directed to some one of the coroners of the county. The sheriff returned the writ of *fieri facias* laid as per schedule, and the goods and chattels replevied. *Motion* on the part of the plaintiffs for a writ of *venditioni exponas* for the sale as well of the personal as of the real estate.

This motion was argued at June term last before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Taney* and *Mayer,* for the motion, contended, that goods taken in execution were in the custody of the law, and could not be replevied out of the hands of the sheriff who seized them. They cited *Pearson vs. Roberts, Willes' Rep.* 672, (note b.)   *Ladd vs. North,* 2 *Mass. Rep.* 514.   *Flagg vs. Tyler,* 3 *Mass. Rep.* 304.   *Thompson vs. Button,* 14 *Johns. Rep.* 86.   *Gilb. on Ex'ns.* 22.  1 *Sellon's Pr.* 528.   *Beatty vs. Chapline,* 2 *Harr. & Johns.* 7.   *Eaton vs. Southy, Willes' Rep.* 136.   *Alexander vs. Mahon,* 11 *Johns. Rep.* 185, 186. *Palgrave vs. Windham,* 1 *Stra.* 212, 214.   *Buxton vs. Home,* 1 *Shower's Rep.* 174.   *Farr vs. Newman,* 4 *T. R.* 640, 651. 4 *Hall's L. J.* 484.   *Turner vs. Fendall,* 1 *Cranch,* 117. *Ball vs. Ryers,* 3 *Caine's Rep.* 84.   *Sturtevant vs. Ballard,* 9 *Johns. Rep.* 337.   *Ilsley vs. Stubbs,* 5 *Mass. Rep.* 280; and *Gardner vs. Campbell,* 15 *Johns. Rep.* 401.

*R. Johnson,* against the motion, cited 6 *Com. Dig.* tit. *Replevin,* (A) 224. *Pangburn vs. Partridge,* 7 *Johns. Rep.* 140. *Clark vs. Skinner,* 20 *Johns. Rep.* 465, and 6 *Bac. Ab.* tit. *Replevin & Avowry,* (C) 56.

*Curia adv. vult.*

BUCHANAN, Ch. J. at this term, delivered the opinion of the court. The main question directly presented by this motion is, whether goods taken by a sheriff in virtue of a writ of *fieri facias,* out of the possession of the defendant in the execution,

can be replevied by a stranger to the judgment and execution. It is a question of considerable importance to the citizens of the state, and now for the first time brought before this court for consideration, and it assumes a character the more impos- ing, from the circumstance that different opinions are under- stood to have been entertained by professional gentlemen, and different decisions made in some of the judicial districts.

It is conceded, and indeed it seems to have been too long and too well settled to admit of doubt, that goods taken by the proper officer, under a writ of *fieri facias*, out of the posses- sion of the defendant in execution, cannot be replevied from the officer *by such original defendant*. And why not? Be- cause, in the language of all the most approved writers on that branch of the law, and denied by none, goods taken in execu- tion are in the custody of the law. So it is laid down in *Co. Litt.* 47, *a*, and in other books, that goods taken in execution, and goods distrained damage feasant, being in the custody and under the protection of the law, cannot be taken for rent in ar- rear. And it would be strange if it were otherwise, for it would be absurd and repugnant *ex vi termini* to say, that goods in the custody of the law, could *legally* be taken out of the custody of the law.

The instances last put of the protection given by the law to that, which is in its custody, are stated, and serve to show its consistency, and that the protection extended to goods in its custody, is not a protection against the writ of replevin alone, of goods taken in execution, but a shield thrown over whatever it takes into its custody. And the rule that goods taken in execution are held to be in the custody of the law, is in strict accordance with sound policy and good sense, with which the principles of the law, when well understood, and properly applied, are seldom if ever found to be at variance.

If a different rule prevailed, and debtors were permitted to defeat the ends of the law, by replevying their goods from the proper officer whenever they should be taken in execution, it would be useless to institute suits, and prosecute them to final judgment. But it is supposed that a distinction may be taken between a debtor, and a stranger, whose goods found in the possession of such debtor are taken in execution; on the gene-

ral ground, that replevin will lie by any rightful owner, for chattels wrongfully taken by another. And in this case it is said, that as the sheriff was only authorised to take the property of the debtor, against whom the judgment was rendered, he was a wrong-doer in taking the property of the plaintiff in the replevin, and that the action was properly conceived.

It is a general principle, that the owner of chattels may replevy them from any person who has unlawful possession of them; but there are exceptions to this general rule, such as where they are in the custody of the law, or have been taken from him by replevin by the party in possession.

In 6 *Com. Dig.* tit. *Replevin,* (A) 224, it is said, that "replevin lies for all goods and chattels unlawfully taken;" which is thus qualified in the next page 225, (D)—"But a replevin does not lie for goods taken in execution."

In this state the action of replevin has nearly taken place of trespass and trover, and is the usual, and almost universal remedy resorted to by those claiming a right to goods in the possession of another, when within the reach of the process of the court, whether tortiously taken or not. But, as it will not lie by a debtor against an officer who has taken them under an execution out of his possession—such an effort to regain the possession of goods taken in execution, being deemed at common law a contempt of the jurisdiction of the court issuing the execution, on the ground that goods so taken are held to be in the custody of the law, it would, for the same reason, be a contempt in any body else.

As a general principle, goods found upon the premises are liable to be taken for rent, but subject to the exception, that if they be under execution they are in the custody of the law, and cannot be distrained. It is true that the property in the goods is not in such case in the landlord, but his right in law to distrain is as complete as that of the owner of goods to an action of replevin, against him who withholds from him the possession. He is no party to the judgment and execution, and has nothing to do with either, but as to them, stands as a mere stranger, seeking to enforce his rights, but restrained from disturbing the *possession* of the officer, by the protecting arm of the law. It is not the officer that the law protects in doing

wrong, but the possession only of the chattels, in order to effect its own ends, the purpose for which the execution issued; and therefore though it will not grant process to take from an officer, goods which he has taken by its own process regularly issued, which would be an incongruity; yet if goods are wrongfully seized by virtue of legal process, the party injured is not deprived of remedy by the interference of the law, but has his redress against the officer for such wrongful taking, and may proceed by writ of replevin to recover the possession of the property itself, after sale, from the purchaser, for then it is out of the custody of the law, and in the hands of a private person.

The application of the rule, "that goods taken in execution cannot be replevied," to the case of a stranger, whose property has been taken on an execution against another person, may sometimes be attended with individual inconvenience. Particular descriptions of property are often valued by the owner at more than their intrinsic worth, and sometimes beyond the amount of any damages to be recovered in an action of trespass or trover against a wrongful taker; and it must always be vexatious to any one to have his property wrongfully taken, and to be driven to an action of trespass or trover for redress, instead of being restored to the possession by the writ of replevin.

But reasoning *ab inconvenienti,* the weight of the argument is on the other side.

A defendant who would, if he could, defeat the ends of justice, by replevying his property himself when taken in execution, would, if the law permitted it, procure another to do it for him, under the pretext that it was his property wrongfully taken, and not the property of the debtor, and so *ad infinitum;* which, to borrow a strong expression, "would be moving in a circle," and a creditor might never arrive at the fruits of his judgment, and thus the very object of the law be disappointed; which would be against public policy, to which individual convenience must sometimes yield. But that inconvenience is comparatively small; it does not very often happen, that the goods of a stranger are taken on an execution issued against another; perhaps never when the fact is known to the officer, and very seldom in doubtful cases, without an indem-

nity from the plaintiff suing out the execution, which he is not always prepared or willing to give. And whenever the goods of a stranger are wantonly taken, or after due notice being given that they are his property, the party injured, if he chooses not to wait and replevy from the purchaser after sale, may always attain ample redress, in exemplary damages, in an action of trespass or of trover, at the hands of a jury—a tribunal, that is always found ready to vindicate the rights of the individual against the lawless oppressor. And in cases of mere mistake, without any intention to do wrong, less than the full value of the goods taken will seldom be recovered. But if the goods were permitted to be taken from the hands of the officer by a writ of replevin, the rights of a creditor might always be defeated, by a mere stranger, having no right, since it could only be determined at the trial, and after the mischief was done, and the very object of the judgment disappointed, to whom the property belonged. And thus the law, by allowing process to defeat its own ends, would virtually close the door of justice against creditors seeking to enforce their judgments. The principle, that the goods of a stranger taken in execution out of the possession of the defendant, cannot be replevied, is recognized in *Thompson vs. Button,* 14 *Johns. Rep.* 86, and *Clark vs. Skinner,* 20 *Johns. Rep.* 465; and so far as this case is concerned, we might stop here.

But the question, whether the goods of a stranger taken out of his possession, on an execution against another person, can be replevied out of the hands of the officer, having also been discussed, and being a question in which the public is materially concerned, and therefore proper to be settled, we avail ourselves of this occasion to express our opinions upon the subject. In *Thompson vs. Button,* and *Clark vs. Skinner,* it is held that in such case a replevin will lie.

But we cannot perceive any sufficient ground for the distinction. In either case the taking the property of a stranger is wrongful as to him, and as much so in one case as in the other. And if replevin will lie by a stranger, whose property is taken in execution out of his possession, on the principle that it is wrongfully taken, it would seem to follow that the same writ will equally lie for an equally wrongful taking of the property

of a stranger out of the possession of a defendant. But it does not depend upon the question, whether the property was wrongfully taken or not, which can only be determined at the trial, but whether it was in the custody of the law or not; and that once established, the possession cannot be disturbed, but the party injured is left to seek his remedy by an action of trespass or trover, or to wait until the goods are sold, and then to regain his possession by a writ of replevin against the purchaser, in whose hands they cease to be in the custody of the law. Upon that principle we think, that in no case whatsoever will replevin he against an officer for goods taken in execution under lawful process; and so is the case of *Ilsley and others vs. Stubbs,* 5 *Mass. Rep.* 280. If it were otherwise, it would always be in the power of a defendant to evade the law, and defeat the ends of justice, by placing his property in the hands of a friend, and causing it, when taken in execution, to be replevied from the hands of the officer by such friend; and thus the mischief would be just as great, as to permit a defendant to replevy property taken in execution out of his own possession.

MOTION SUSTAINED, AND VENDITIONI EXPONAS ORDERED.