THOMAS CORNER, B. MEZICK CORNER and GEORGE
W. CORNER *vs.* WILLIAM MACKINTOSH.

*Liability of the Plaintiffs in an Attachment for the acts of the
Sheriff in executing the Writ—Not relieved from Liability
by private Instructions to Sheriff—When Plaintiff in an
Execution not liable for Trespass committed by Sheriff—
When liable—Liability for the natural results of a Wrong-
ful act—Measure of Damages where there has been a total
deprivation of the property—Counsel fees not allowed as
Damages.*

Where in executing a writ of attachment, under instructions from the plain
tiffs to attach particular property, the sheriff has become a trespasser, the
plaintiffs are not relieved from liability for the action of the sheriff by
reason of any private instructions given to the sheriff as to how the prop-
erty was to be treated or disposed of.

The question is not what the sheriff was privately instructed to do after the
seizure, but what he was authorized to do, by the command of the process
placed in his hands, and what was actually done under that process.

Where a party issues a *fieri facias* or other execution, and simply places it in
the hands of the sheriff, with directions to make the money of the goods
and chattels of the defendant in the execution, and the sheriff proceeds and
seizes the property of a stranger, for that of the defendant, the plaintiff in
the execution giving no instruction in regard to such seizure, and in no
manner interfering in the execution of the process, will not be held liable
for the trespass committed by the sheriff.

But, if the execution plaintiff directs the sheriff to take the goods of another
person than the defendant in the execution, such previous direction will
undoubtedly make him a trespasser, on the principle that all who procure
a trespass to be done are trespassers, and the sheriff would be supposed not
to have taken the goods merely under the authority of the writ, but as the
servant of the execution creditor.

Where a plaintiff has become liable in damages for the original seizure of
property by the sheriff, his liability continues for the subsequent sale of the

property which was but a legal incident of the seizure; for the natural results of a wrongful act are understood to include all the damage to the party of which such act was the efficient cause, though in point of time, the damage did not accrue until some time after the act done, and proof of actual damage may extend to all facts which occur and grow out of the original injury, even down to the day of the verdict, excluding only such facts as not only happened since the institution of the action, but which furnish of themselves sufficient grounds for a distinct suit.

As there has been a total deprivation of the property, the measure of damages in such case as this, is the value of the property taken, with interest on the amount to the time of trial.

The plaintiff is entitled to recover all the legal damages which he has sustained, but counsel fees which he paid in defending the property in the attachment suit, are not proper to be allowed as damages in this action.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered three prayers as follows:

1. That the petition of the defendants in the attachment case in Baltimore County, the proceedings in which, have been given in evidence, is conclusive evidence against the defendants, that they knew that the sheriff had seized the goods in question, and that they ratified the seizure.

2. That the plaintiff is entitled to recover the value of the goods seized at the time and place of seizure, with interest thereon until the payment to him of the sum in bank, as mentioned in the proceedings in the attachment case in Baltimore County, which have been given in evidence, and then interest on the balance from that day until this day.

3. That reasonable counsel fees are to be allowed as to the attachment case, the proceedings in which have been given in evidence, as well for the trial in Baltimore County, as for the proceedings in the Court of Appeals.

The defendants offered the following prayers:

1. If before the sheriff had done any thing under the writ of attachment which has been offered in evidence in this cause, the defendants' counsel ordered and directed him not to take possession of any of the property mentioned in the schedule accompanying his return to said writ, and not to disturb the plaintiff's possession, or that of any agent of his if found in possession thereof, and neither the defendants nor their counsel ever gave the sheriff any other order or direction, then under the pleadings in this cause, the plaintiff is not entitled to recover.

2. If the defendants' counsel directed the sheriff in executing the writ of attachment, which has been offered in evidence in this case, not to take possession of any of the property mentioned in the schedule accompanying his return to said writ, and not to disturb the possession of the plaintiff or of any agent of his, if found in possession thereof, and the sheriff obeyed said directions, then the plaintiff is not, under the pleadings in this cause, entitled to recover.

3. If the sheriff did not, under the writ of attachment, which has been offered in evidence in this cause, take possession of any of the property mentioned in the schedule accompanying his return to said writ, and did not disturb the possession of the plaintiff, or of any agent of his found in possession thereof, then the plaintiff is not, under the pleadings in this cause, entitled to recover, although the sheriff made return to said writ, that he had attached said property as per schedule, and although after the institution of this suit, he sold said property in pursuance of the order of the Circuit Court for Baltimore County, which has been given in evidence.

4. If the Court shall find that when the sheriff was proceeding to execute the writ of attachment, which has been given in evidence, a certain H. Horner was, as servant of the plaintiff, in possession of the property mentioned in

Corner, *et al. vs.* Mackintosh.

the schedule accompanying the sheriff's return to said writ, and that the said sheriff laid said attachment in the hands of said Horner, and that the plaintiff, before any removal or sale of said property, had notice of said attachment, and of the sheriff's action thereunder; and shall further find that the plaintiff made no request or demand to be allowed to have or retain possession of said property as garnishee, under said writ, and that the said Horner made no such demand or request ; and shall further find that the said sheriff, at the time of laying said attachment, did not remove said property, but left the same where he found it, on the farm of the plaintiff, which was occupied by the said Horner as agent of the plaintiff, and that the sheriff did not interfere with said goods and chattels, further than to make provision for the safe-keeping thereof, and the feeding of the live stock, which was part thereof, and that said provision was rendered necessary by the refusal of the said Horner to care for and feed the same ; and shall further find that the Circuit Court for Baltimore County, in and for the interest of all persons who might be interested in said personal property, ordered the same to be sold by the sheriff, and that the plaintiff had knowledge thereof, or made no objection to said sale, and the same was made accordingly, and the sum of $2283.25, being the proceeds thereof, less the cost and expenses of said sale, was paid into said Court, and by its order deposited in bank to the credit of said attachment cause; and shall further find that said sheriff, before the time for the return of said attachment, laid the same also in the hands of the plaintiff, and at the proper time made due return thereof; and shall further find that the plaintiff did not, before the sale of said personal property, ask the said Court to cause the same to be delivered to him, and did not after sale, ask to have the proceeds of said sale paid to him until the 6th day of March, 1871, when he filed his petition for that purpose, which has been given in evidence; and shall

further find that on the 11th day of March, 1871, the Court, upon said petition, ordered the said sum of $2283.25, which had been deposited in bank, to be paid to the plaintiff, and that said sum was, in accordance with said order, paid to him on the 13th day of March, 1871, then the plaintiff is not entitled, under the pleadings in this action, to recover as damages in this action, even if the Court shall find for the plaintiff, for any loss of interest upon said proceeds of sale so paid into Court and deposited in bank, while the same was so in bank under the order of said Court.

5. If the Court shall find that the sheriff of Baltimore County was not directed by the defendants or their counsel to exceed or depart from the command in the writ of attachment which has been offered in evidence, then the defendants are not liable, under the pleadings in this action, for any seizure which the Court may find to have been made by said sheriff under color of said writ, although the Court may find that he seized and took possession of goods and chattels of the plaintiff, and may also find that after the institution of this suit, he sold the same in pursuance of the order of the Circuit Court for Baltimore County, which has been given in evidence.

6. That there is no evidence of any wrong committed before the institution of this suit, for which the plaintiff, under the pleadings in this cause, is entitled to recover in this action.

7. Even if the plaintiff be entitled to recover in this suit, he is not, under the pleadings in this cause, entitled to recover any damages for the sale of the property offered in evidence, the said sale having been made on the farm of the plaintiff, after the institution of this suit and in pursuance of the order of the Circuit Court for Baltimore County, as shewn by the evidence offered on behalf of the plaintiff.

8. Even if the plaintiff be entitled to recover in this action, he is only entitled, under the pleadings, to recover

for such damages, if any, as may have resulted from the taking and detention of the property mentioned in the evidence.

9. That no evidence has been offered that any damage resulted from the taking and detention of the property offered in evidence, and the plaintiff is, under the pleadings in the cause, entitled to recover, if at all, only nominal damages.

10. The Court is further prayed to grant the above first three prayers and each of them, in view of and in connection with the further fact that the sale made was proved by the plaintiff not to have been made until after the institution of this suit, and to have been made on the farm of the plaintiff.

The Court (DOBBIN, J.,) granted the plaintiff's prayers and the eighth prayer of the defendants, but rejected the defendants' other prayers.

The verdict and judgment being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*Arthur W. Machen* and *John H. Thomas,* for the appellants.

Neither the writ of attachment nor the orders of the appellants' counsel authorized the sheriff to take possession of the property, or disturb the appellee or any agent of his found in possession thereof. *Van Brunt vs. Pike,* 4 *Gill,* 271–276.

The sheriff did not, technically or in fact, disturb the possession of either. He testified that, if he had done so, he would have removed the property, or have left it and taken a forthcoming bond for his protection. Horner, the appellee's agent, refused to retain possession of it, because he had no corn to feed the stock. If the sheriff did any-

thing objectionable, it was rendered necessary by the appellee's abandonment of the property, not by any act or order of the appellants.

The Court, by its refusal of the appellants' second, third, fourth and sixth prayers, decides, in opposition to this principle and these facts, that the appellants are liable in this action, which is for "seizing, taking and carrying away the property, and converting it to their own use," although neither they nor the sheriff had done either of the acts complained of. If the sheriff did any of the acts complained of, in opposition to appellants' orders, or even without express direction, *they* are not liable therefor. The Court therefore erred in refusing the appellants' first and fifth prayers.

The appellants, if liable for anything, could only have been made responsible, when this suit was brought, for the taking and detention of the property, even by a declaration appropriate for that purpose, not for the sale of it, which did not take place till the 10th of April, three days after the institution of the suit, and which sale was made by order of the Court. *Ranahan vs. O'Neale*, 6 *G. & J.*, 298; *Trieber vs. Blocher*, 10 *Md.*, 20.

The Court therefore erred in refusing the appellants' sixth, seventh, ninth and tenth prayers.

The correctness of these principles seems to be recognized by the granting of the appellants' eighth prayer; but they are utterly nullified by the granting of the appellee's three prayers, allowing him the value of the goods at the time of the alleged seizure—interest thereon and counsel fees paid by him in the attachment case.

It was not necessary for the appellee to appear in the attachment case. He might, in spite of these proceedings, have gone on and made his own sale. The appellants expressly told him that they knew of nothing to interfere with his so doing. The appellants are not responsible for his voluntary desertion of his property, his voluntary abandonment of his own sale.

If he had recovered from the appellants the value of the property, in trespass or trover, such recovery would have vested in them the title to the property. *Green vs. Johnson*, 3 *G. & J.*, 389–93–4 ; *Schindell vs. Schindell*, 12 *Md.*, 122 ; *Stirling vs. Garritee*, 18 *Md.*, 473.

He did recover and receive the proceeds of them. Yet the Court, by its propositions of law, verdict and judgment, gave him the value of them again, interest thereon and counsel fees, giving him thus the value of them twice, and the other elements of alleged damage in addition.

The Court below held that the petition of the appellants for the sale of the attached property was " *conclusive* evidence against them that they knew that the sheriff had seized the goods in question, and that *they ratified the seizure.*" We respectfully submit that it was no evidence at all of anything of the kind. The petition stated the facts as they existed, and invoked, as the appellants had a right to invoke, the judicial action of the Court. Even if the technical statement that the sheriff, under the writ of attachment, had " levied upon and seized " the property in question, be considered as importing, (which we contend that it does not fairly import,) an actual taking of the goods, and deprivation of the appellee's possession, it certainly does not say that such taking of them was authorized by the appellants. Unless the writ of attachment authorized a trespass, none was authorized by them.

But even if the sheriff, while executing the writ, had committed a trespass, and the appellants had afterwards ratified it, this could not in law make them liable to an action of *trespass.* No act of another, not done in the name of the principal, can, by the ratification of the latter, be made a trespass of his. This is an ancient principle of law, and is settled beyond controversy. *Woollen vs. Wright*, 1 *Hurl. & Colt.*, 554 ; *Wilson vs. Tumman*, 6 *M. & Grang.*, 236, where it was held that where goods were wrongfully seized by the sheriff under a valid writ

of *fieri facias,* the execution creditor did not, by a subsequent ratification, become liable in trespass for the seizure.

Whatever the sheriff did, if anything, in excess of the authority conferred by the writ, he did as sheriff, and in his own name. And, therefore, unless he was, in advance, directed to do it, the plaintiffs in the attachment cannot be held responsible for it in trespass. *Wilson vs. Tumman,* 6 *M. & G.,* 237.

There was error also in the measure of damages adopted by the Superior Court. The appellee having acquiesced, both in the sale, which he rendered necessary by not exercising his right as garnishee to retain or be restored to the possession of the property, and in the subsequent deposit of the proceeds of the sale in bank, to the credit of the cause, and subject to the Court's order, has no right to complain of loss of interest, or exact interest from the plaintiffs in attachment. A plaintiff is not entitled to recover damages which he might, by the exercise of ordinary care, have prevented. *Sedgwick on Measure of Damages,* 94, 95, 361; *Loker vs. Damon,* 17 *Pick.,* 284; *Benson vs. Atwood,* 13 *Md.,* 20, 21; *Borden Mining Co. vs. Barry,* 17 *Md.,* 430.

Interest, under any circumstances, was not a matter of fixed legal *right* as claimed by the appellee in his prayer, and as the Court ruled. The appellee, by adopting the sale, and taking the money out of Court upon his own application as garnishee, is precluded from treating the deposit in bank as an injury, or holding the appellants responsible for a loss of interest which was the necessary consequence of the act of the Court in ordering the sale— an act intended for the appellee's benefit, and of which he has voluntarily availed himself.

The Court below, we think, clearly erred in including in the damages *counsel fees,* paid or payable for the defence of the attachment suit. As well might counsel fees incurred in *this* suit be included. The allowance of counsel

fees at all was in contravention of the rule constantly adhered to in this State. *Day vs. Woodworth,* 13 *Howard,* 371 ; *Wallis vs. Dilley,* 7 *Md.,* 237.

Even had there been no other objection, special damages of this nature were not recoverable under the *declaration,* which contains no averment of special damage.

*E. Otis Hinkley,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This is an action of trespass *de bonis asportatis,* brought by the appellee against the appellants ; and the cause of action is for the seizing and taking of certain goods and chattels by the sheriff of Baltimore County, under process of attachment, issued on a judgment recovered by the present defendants against a certain William Robinson. The case was tried on plea of not guilty, before the Court without the aid of a jury. There is little or no dispute in regard to the evidence ; the main and leading question in the case being whether, as matter of law, the defendants are liable for the action of the sheriff in seizing the property of the plaintiff, under the facts and circumstances of the case. At the trial below each party offered prayers to be ruled as the law to govern the Judge in making up his judgment ; but only those offered by the plaintiff, and one of the ten offered by the defendants, were granted ; the other nine of those offered by the defendants being rejected. Some of the prayers rejected raise the question of the insufficiency of evidence, under the pleadings in the cause, to entitle the plaintiff to recover at all ; and others raise questions as to the extent of the right to recover under the pleadings and evidence.

The judgment against Robinson was recovered on the 13th of February, 1860, and two days previously he executed a deed of trust to the present plaintiff for the benefit of releasing creditors, of all his property, real and

personal; and the goods and chattels attached, being part
of the property thus conveyed, consisted of live stock,
gathered crops, and farming implements, found on the
farm of the debtor, also part of the property conveyed.
The plaintiffs in the judgment supposing the deed of
assignment to be defective for want of an affidavit as to
its being *bona fide*, sued out an attachment on their judg-
ment, and caused it to be laid on the farm, and also the
goods and chattels found thereon of the description just
mentioned. The attachment was issued and the property
seized on the 15th of March, 1860. The sheriff found
the farm and the property thereon under superintendence
and management of a party by the name of Horner; and
after making a schedule of the property seized, and hav-
ing the same appraised, the personal property was left in
charge of two men on the farm, whom the sheriff paid
for their services. The sheriff made return to the writ as
follows: "Attached as per schedule, and attachment also
laid in the hands of H. Horner, garnishee, March 15th,
1860; also laid in the hands of William McIntosh, gar-
nishee, May 20th, 1860. Personal property sold on the
10th day of April, 1860, to the amount of $2,504.71."

At the time of the seizure by the sheriff, all the per-
sonal property mentioned in his schedule, was advertised
to be sold by the plaintiff, as trustee under the deed, on
the 21st of March, 1860; which sale was entirely defeated
by the attachment. The plaintiff, on the 19th of March,
notified the sheriff of the intended sale, and warned him
that he would be held liable for the seizure. And, on the
same day, he addressed a communication to the defend-
ants, apprising them of the intended sale, and requested
to be informed whether they intended that the sheriff
should hold the property under the attachment; and, at
the same time, he notified them that they would be pro-
ceeded against for taking the property. To this com-
munication the defendants replied, that the plaintiff

should exercise his own discretion as to whether he would proceed with his sale or not; and they said that they were not aware that the sheriff had interfered with the sale, but they left it with the plaintiff to do what he might think proper under the circumstances.

After this, that is, on the 22d of March, 1860, and before the return of the writ, the defendants filed a petition for the sale of the personal property attached, under section 27 of Art. 10 of the Code, alleging that the property had been attached, and that it was perishable, and expensive to keep. An order of sale was accordingly passed on the same day, and the property was sold on the 10th of April, as stated in the sheriff's return. At this sale, one of the defendants attended, and instructed as to the making it. The present action was brought on the 7th of April, 1860, three days before the day of sale by the sheriff.

Upon the return of the attachment, the plaintiff intervened as claimant of the property, and ultimately succeeded in establishing his right to it, under the deed of trust. *Mackintosh vs. Corner,* 33 *Md.,* 598.

That the sheriff was a trespasser in seizing the property, we do not understand to be questioned. But it is contended for the defendants, that they are not liable for the trespass alleged, because they in no manner participated in disturbing the plaintiff's possession of the property; and that there was nothing done by them, subsequent to the seizure by the sheriff, that would make them liable for his proceeding in the premises. And this position is attempted to be maintained upon the proof of the instruction that was given the sheriff at the time the attachment was placed in his hands. According to that proof, the defendants instructed the sheriff to attach the particular property seized by him, but they instructed him at the same time not to disturb the plaintiff's possession of the property, or that of any agent of his who might be found

in possession of it; but that he should attach the property by schedule, and leave the same in possession of the plaintiff or his agent, and lay the attachment in the hands of the person in possession, and return him as garnishee.

But how this is to relieve the defendants we are unable to perceive. In the first place, the question is, not what the sheriff was privately instructed to do after seizure, but what he was authorized to do by the command of the process placed in his hands, and what was actually done under that process; it being conceded that he was specially instructed to attach the particular property that, in fact, belonged to the plaintiff. In the case of a party issuing a *fieri facias* or other execution, and simply placing it in the hands of the sheriff, with direction to make the money of the goods and chattels of the defendant in the execution, and the sheriff proceeds and seizes the property of a stranger for that of the defendant, the plaintiff in the execution giving no instruction in regard to such seizure, and in no manner interfering in the execution of the process, then the plaintiff in the execution will not be held liable for the trespass committed by the sheriff. This may be regarded as a settled principle, upon the authority of several well considered cases. *Wilson vs. Tumman & Fretson,* 6 *M. & Gr.,* 236; *Woollen vs. Wright,* (*in Ex. Ch.,*) 1 *H. & Colt.,* 554. But, in the language of the Court in the cases just cited, if the execution plaintiff directs the sheriff to take the goods of another person than the defendant in the execution, such previous direction will undoubtedly make him a trespasser, on the principle that all who procure a trespass to be done are trespassers themselves, and the sheriff would be supposed not to have taken the goods merely under the authority of the writ, but as the servant of the execution plaintiff.

Here, the sheriff was armed with process, the command of which was, that he should attach of the lands, tenements, goods, chattels and credits of the debtor, found

in his bailiwick, to the amount of the debt and costs, and when he should have the same so attached, the same in his custody to be safely kept, so that condemnation thereof might be had.   With this process he received from the present defendants specific instruction as to the property upon which it was to be levied.   Now, if the attachment or seizure of this property was designed to have any operation at all, it must, in the nature of things, have affected and disturbed the possession of the owner.   The whole proceeding was adverse to the claim of the present plaintiff, and was intended to bring into question his right to the property under the deed.   The seizure by the sheriff was the assertion of a superior right to that of the present plaintiff, and it naturally enough defeated the intended sale under the deed; as no person would have purchased the property, at its value, while under seizure by attachment; and, as we have seen, the defendants refused to withdraw the attachment or abandon the seizure.   The plaintiff's possession was not only disturbed by the exercise of control and authority over the property, inconsistent with his free and absolute right of ownership, which would of itself constitute a trespass, (2 *Greenl. Ev., sec.* 621, and cases there cited; *Wintringham vs. Lafoy,* 7 *Cow.,* 735,) but the sheriff actually displaced the plaintiff's possession, by taking the property into his own custody.   And the fact that the sheriff returned both the plaintiff and Horner as garnishees, in no manner altered the case.   It is always proper, when a party is found in possession of lands or chattels which are attached, that he should be returned as garnishee: *Code, Art.* 10, *sec.* 12; *Barney vs. Patterson,* 6 *H. & J.,* 201.   But this is required in respect to the party's apparent relation to the property, and in order to give him a day in Court to assert and vindicate any right that he may have, inconsistent with the right of condemnation.   The judgment of condemnation, however, in such case, is not against the garnishee, but of

the particular lands or chattels attached ; and a *fieri facias* goes to the sheriff, commanding him to sell the property thus condemned.    2 *Harris' Ent.*, 83, 680 ; *Davidson's Lessee vs. Beatty*, 3 *H. & McH.*, 615, 616.    The only security therefore, in the attachment of specific goods and chattels, is the custody or control which the sheriff may take of them ; and hence it is said that "the first duty of the attaching officer is to retain possession of the property." *Drake on Attach.*, secs. 290, 350, 423.    By the seizure, the officer becomes vested of a special property in the chattels, and they are thenceforth regarded as in the custody of the law ; (*Cromwell vs. Owings*, 7 *H. & J.*, 55 ;) and it was only upon this assumption, that the defendants were enabled, upon their application, to have the property sold before the return of the writ, because it was perishable and expensive to keep.    In practice, we know it is frequently the case, that the sheriff leaves the goods and chattels in the possession of the party with whom they are found, until condemnation ; but this is optional, depending upon the nature of the property and the character and responsibility of the party in possession.    The sheriff, however, has no right to require such party to become bailee of the goods and chattels attached, against his consent ; and in this case, the present plaintiff did refuse to become such bailee.

But it is insisted, that even if the plaintiff be entitled to recover for the original seizure by the sheriff, he is not entitled, under the pleadings in the cause, to recover any damages for the subsequent sale of the property under the order of the Court, inasmuch as the action was brought before the sale was made by the sheriff, though after it was ordered by the Court.    In this proposition, however, we do not concur.    The sale of the property was but a legal incident of the attachment, and resulted as a consequence of the seizure by the sheriff.    It was had on the application of the defendants, and they cannot, therefore,

complain of or question its propriety. The authorities are uniform and clear in maintaining the principle, that the natural results of a wrongful act are understood to include all the damage to the plaintiff of which such act was the efficient cause, though in point of time the damage did not occur until some time after the act done. To such an extent is this principle carried, for the purpose of accomplishing justice, and securing to parties full compensation for wrongs suffered, that the proof of actual damages may extend to all facts which occur and grow out of the original injury, even down to the day of the verdict; the exception to this rule excluding only such facts as not only happened since the institution of the action, but which furnish of themselves sufficient ground for a distinct suit. 2 *Greenl. Ev.*, sec. 268 *a* ; *Wilcox vs. Plummer*, 4 *Pet.*, 172 ; *Mayne on Damages*, 33–35. The right of action accrued upon the attachment of the property by the sheriff, and the subsequent disposition of the property was a fact material in fixing the amount of damages resulting from the original wrong. *Richardson vs. Hall*, 21 *Md.*, 399, 405. As there has been a total deprivation of the property, the measure of damages in such case as this is the value of the property taken, with interest on the amount to the time of trial. The plaintiff is entitled to recover all the legal damages which he has sustained ; and nothing less than the value of the property, with interest on the amount, would be legal or just compensation for the wrong done. *Harker vs. Dement*, 9 *Gill*, 7 ; *Moore vs. Shultz*, 31 *Md.*, 423 ; *Wanamaker vs. Bowes*, 36 *Md.*, 42. Of course, whatever amount of the proceeds of the sale made of the property that the plaintiff has received, that should be credited as of the time when received by him ; and thus reduce the amount of recovery.

Having stated the principles applicable to the entire case, we can have but little difficulty in disposing of the several prayers ruled upon by the Court below.

As to the first and second prayers offered by the plaintiff, in view of the facts of the case, we can perceive no objection to them, and think the Court committed no error in granting them.    But as to the third prayer of the plaintiff, we think there was error in granting it; because counsel fees paid by the plaintiff in defending the property in the attachment suit are not proper to be allowed as damages in this action.    It is true, there are cases to be found in other States in which such an allowance has been sanctioned; but we are not aware of any case in which such an allowance has been sanctioned by this Court.    The plaintiff was not bound to intervene in the attachment case as claimant of the property, though he had the option to do so; (*Richardson vs. Hall*, 21 *Md.*, 405 ;) and there would seem to be no well founded reason for allowing such an element to enter into the estimate of damages in a case like the present.    Indeed, there are decisions directly against it.    *Holloway vs. Turner*, 6 *Q. B.*, 928 ; *Young vs. Tustin*, 4 *Blackf.*, 277 ; *Mayne on Damages*, 27, 28 ; *Wallis vs. Dilley*, 7 *Md.*, 237.

Of the ten prayers offered by the defendants, only one, the eighth, was granted ; all the others were refused, and we think correctly.    Without examining each prayer separately, it is sufficient to say, that none of those refused can be maintained, consistently with the principles stated in the previous part of this opinion.    The judgment of the Court below, however, must be reversed, because of the error in granting the plaintiff's third prayer.

*Judgment reversed, and*
*new trial awarded.*

(Decided 26th March, 1878.)