## FIRST NATIONAL BANK *v.* CORPORATION COMMISSION OF NORTH CAROLINA.

[No. 38, October Term, 1931.]

*Decided January 12th, 1932.*

510

 

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Raymond S. Williams* and *Roger B. Williams,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellant.

*Walter H. Buck* and *James Morfit Mullen,* for the Corporation Commission of North Carolina, appellee.

Parke, J., delivered the opinion of the Court.

The First National Bank of Baltimore was the landlord of the First National Company, a corporation of the State of Delaware, and the tenant was in possession of a portion of the eighteenth floor of the landlord's bank and office building under a demise for a term of one year, which began on July 1st, 1929, at the rent of $5,200, payable in advance in equal monthly installments of $433.34 on the first day of every month of the year. On the 18th of February, 1930, the Corporation Commission of the State of North Carolina, a corporation of that state, procured an attachment to be issued out of the Superior Court of Baltimore City against the First National Company as a nonresident debtor corporation on an alleged debt of $2,060, and gave the sheriff written instructions to seize all furniture or other chattels of the alleged debtor in its office in the landlord's building, and to schedule and appraise, and then to leave these articles, "in the possession of their present custodian." *Hodgson v. Southern Bldg. etc. Assn.,* 91 Md. 439, 46 A. 971. The sheriff complied with these directions on February 20th, 1930, and, accordingly, made his return of the levy of the movable office furniture of the company, and concluded his return with the certification that "goods levied upon, left where found at risk of plaintiff, as per order of the plaintiff's attorney."

At the time of this procedure, there was no rent in arrear; and on March 27th, 1930, the attaching creditor, in order to permit the debtor to make arrangements for refinancing its affairs, agreed, until it notified the debtor differently, not to press the attachment, upon the understanding that none of the furniture would be removed without the creditor's consent. At this point, the debtor informed the creditor that the rent had been paid only to February 1st, 1930. Time passed without the creditor being paid, and its attorney wrote to the debtor's attorney on June 24th, 1930, and complained of the delay, and stated that, if the claim were not paid, he would press the attachment on the furniture. The following day a reply was written in behalf of the debtor, stating that the effort to procure funds was in progress, and requesting that the creditor delay until after the next July 7th. On June 30th, 1930, the creditor agreed to wait as requested. Meanwhile, the tenant was in physical possession and enjoyment of the personalty, and the unpaid monthly installments of rent were accumulating, and on June 1st, 1930, the sum of $1,733.34 was due; and, on June 19th, 1930, the landlord distrained for this rent, and seized and took actual possession of the personal property upon the demised premises. The goods and chattels thus distrained were the same that had been levied upon by the sheriff under the writ of attachment against the tenant as a nonresident corporation. The next step at law was apparently taken in the attachment case, as the record discloses that on August 12th, 1930, the plaintiff obtained a judgment of condemnation for the property attached in the amount of $2,114, and execution was awarded on the plaintiff filing an approved bond of indemnification to the defendant.

While these latter events were happening, creditors of the debtor began on May 26th, 1930, proceedings in equity against the debtor for a receivership of its affairs, and on July 10th, 1930, the chancellor appointed receivers, and by July 16th, 1930, the parties in interest had agreed that the goods and chattels in controversy should be sold by the receivers and the proceeds of sale distributed in accordance

with the respective rights of the parties as though there had been no sale. The sum of $1,445.73 was realized, and on April 6th, 1931, the chancellor decreed that the Corporation Commission of the State of North Carolina had priority by virtue of its attachment on warrant, and that the landlord must fail because its rent was not due at the time the goods and chattels were taken, and that then and thereafter these goods and chattels, and the proceeds thereof, were in the custody of the law by reason of the attachment and the agreement. The appeal is taken from this decree.

The decision in the pending case depends upon whether or not the chattels were in the custody of the law at the time the landlord attempted distraint.

When the sheriff or other officer seizes goods and chattels under a writ of *fieri facias* (1), or under a writ of attachment (2), he acquires a special or qualified property in the goods and chattels by virtue of which they are in the custody of law, and therefore are not subject to be seized and distrained for rent in arrears (3). Should there be rent in arrear at the time of the seizure, but no distraint, the execution creditor, who has caused to be seized the goods and chattels of a tenant upon the demised premises, must pay the rent so in arrear for such premises for a period not in excess of one year, before the goods and chattels may be removed by the officer; or, if not removed, but sold on the premises, the officer must pay the rent due out of the proceeds of the sale in his hands. The provision for the payment of the rent in arrear was made by the Statute of 8 Anne, ch. 14, to relieve, to this extent, the hardship frequently resulting to the landlord by an enforcement of the common law principle of *custodia legis* in favor of the claim of an execution creditor who had seized the goods and chattels of the tenant on the premises before the landlord had distrained for the rent in arrear (4). Although an attachment on warrant is not an execution within the meaning of the Statute of 8 Anne, ch. 14, sec. 1, yet, by analogy, it is held that the claim of the attachment creditor must yield precedence to the rent in arrear for a similar period, so that this rent, if properly

established, will be first paid out of the proceeds of the condemned property found upon the premises demised to the attachment debtor (5).

(1) *State v. Page,* 1 H. & J. 475, 477; *Williamson v. Wilson,* 1 Bland, 435; *Jones v. Jones,* 1 Bland, 449. (2) *Thomson v. Baltimore & Susquehanna Steam Co.,* 33 Md. 312, 319; *Ginsberg v. Pohl,* 35 Md. 505, 507, 508; *Corner v. Mackintosh,* 48 Md. 374, 388. (3) *Cromwell et al. v. Owings,* 7 H. & J. 55, 58; *Thomson v. Baltimore & Susquehanna Steam Co.,* 33 Md. 312, 319; *Fox v. Merfeld,* 81 Md. 80, 82, 31 A. 583; *Baltimore, C. & A. Ry. Co. v. H. Klaff & Co.,* 103 Md. 357, 361, 63 A. 360; *Mears v. Perine,* 156 Md. 56, 143 A. 591. (4) *Washington v. Williamson,* 23 Md. 244, 251; *Calvert Bldg. etc. Co. v. Winakur,* 154 Md. 519, 527-532, 141 A. 355; *Mears v. Perine,* 156 Md. 56, 57-64, 143 A. 591. (5) *Fisher v. Johnson,* 6 Gill, 354, 359-362; *Harden v. Moores,* 7 H. & J. 4; *Thomson v. Baltimore & Susquehanna Steam Co.,* 33 Md. 312, 316-319; *Wanamaker v. Bowes,* 36 Md. 42, 59; *Gumbel v. Pitkin,* 124 U. S. 131, 8 S. Ct. 379, 31 L. Ed. 374, 378.

In the appeal of *Washington v. Williamson,* 23 Md. 244, the report shows that two executions were placed in the hands of the sheriff, and levies were made upon personal property in the possession of the judgment debtor during the month of June, 1860. The articles were scheduled but left by the sheriff, where taken, in the warehouse of the judgment debtor, and so remained until sold on the premises by the sheriff pursuant to the executions. After these levies had been made, the landlord of the judgment debtor notified the sheriff that, on July 1st, the tenant was in arrears for six monthly installments of rent for the warehouse in which the chattels were found, and which was demised to the debtor. The *nisi prius* court ordered the sheriff to pay out of the proceeds of the sale, made after July 1st, six installments of rent, which would satisfy the rent then in arrears to July 1st, although but five installments of rent to June 1st were due when the executions were issued. The proceeds of the execution in

the hands of the sheriff were exhausted by this application, and an appeal was taken by the holder of the judgment on which an execution had first been placed in the hands of the sheriff and levy made. In this case, the court declared that the sheriff had the "option to remove the goods or not from the premises before the sale. The goods being *in custodia legis* in either case, but subject to the statutory lien for the rent, the sheriff became liable for the rent," but the landlord under the Statute of Anne "is entitled only to so much rent as accrued or fell due before the levying of the execution, provided the same do not exceed one year's rent." Page 252 of 23 Md.

While the case last cited expressly holds that the goods and chattels seized by the sheriff remain in the custody of the law, although the sheriff does not remove them from the premises, but leaves them in the possession of the owner of the articles, yet the instance is one of a seizure under an execution. It is not perceived how, on principle, a taking of property by the sheriff pursuant to a writ of attachment does not likewise place the goods and chattels *in custodia legis,* since the taking is *in rem* and dedicates the personalty seized to the exigency of the particular writ to the exclusion of any conflicting process at law. The precise point is so adjudicated. In *Thomson v. Baltimore & Susquehanna Steam Co.,* 33 Md. 312, this court said, "after the seizure of goods under an attachment and before sale, they are in the custody of the law, and, consequently, cannot be distrained, because the party distraining cannot legally take them into his own possession." Page 319 of 33 Md. Again, in *Ginsberg & Oppenheim v. Pohl,* 35 Md. 505, the court determined that, so long as the attachment lien exists, the chattels seized thereunder are in the custody of the law, and although they cannot be taken by another officer under a subsequent execution or attachment, yet, if the latter be directed to the same officer, he may schedule the property already in his possession and hold the surplus after satisfying the prior executions or attachments. In making the levy under the subsequent writs, however, he cannot be sued as trespasser, because the goods and

chattels were at the time in his possession under prior writs. The owner may sue him in trespass for the original taking, i. e., under the prior writs, or he may sue in case for damages sustained by the levy under the subsequent writs; so also, if, instead of taking the goods, he suffers them to remain with the owner after the seizure under the writs. In such a case, so long as the attachment lien exists, the possession of the owner is the possession of the officer, and although he may schedule the goods under subsequent writs, yet, when he actually takes possession of them, the law will refer the taking to the prior writs. Pages 507, 508, and see page 510 of 35 Md. And see *Corner v. Mackintosh,* 48 Md. 374, 387, 388; *Horsey v. Knowles,* 74 Md. 602, 606, 607, 22 A. 1104; *Gumbel v. Pitkin,* 124 U. S. 131, 8 S. Ct. 379, 31 L. Ed. 374, 378.

While the Maryland doctrine is not universally accepted, and there are weighty reasons why a levy of the writ should be accompanied or immediately followed by an interruption of the defendant's apparent ownership, and the time when the custody of law begins should be manifested by the relinquishment of the defendant's possession and by the assumption of exclusive possession by the officers of the law, yet there are countervailing practical considerations which, by tempering the harshness and lessening the injury of an immediate and peremptory removal of the goods and, nevertheless, warning the defendant of the imminent necessity to discharge his obligation, are of such public importance as to cause Mr. Freeman to write: "But in most states, it is clear that, if the levy is otherwise perfect, it will not be invalidated by leaving the property with the defendant. The officer need not in any case take charge of the property in person. He may act through the agency of deputies or keepers, being in either event responsible for their conduct. If he chooses to repose special confidence in the defendant, he may appoint him as keeper, and may leave the property in his custody. If the defendant abuses his trust by destroying the property, or by otherwise placing it beyond the power of the officer, the latter is responsible to the plaintiff in

execution. But the fact that the defendant is still in possession does not authorize him to sell the property, nor does it render the property liable to seizure under subsequent writs. The levy is, for all purposes and against all persons as binding as though the sheriff was personally in possession of the property." *Freeman on Executions* (3rd Ed.), sec. 261; 6 *C. J.* "Attachments," sec. 619, p. 316. *Contra, Drake on Attachments* (7th Ed. 1891), sec. 292A, which relies on early cases; and 1 *Taylor on Landlord and Tenant* (8th Ed.), sec. 594, where text is supported by *Acker v. Witherell* (1843), 4 Hill (N. Y.) 112, which, in turn is a construction of local statutes. 1 Rev. St., p. 796 (2nd Ed.), sec. 28. 2 Rev. St., p. 413 (2nd Ed.), secs. 16, 17. In *Story on Bailment,* the distinguished jurist and author states the law to be that: "The officer, who has made an attachment upon goods is considered as having the custody thereof as long as the attachment continues and if he delivers them over to the bailee, or to the debtor, and a loss ensues, he will be liable to the creditor, and the loss of the property is at his own peril." Section 128. See sections 124-128.

If, however, it should appear that the levy was not made in good faith, nor for the purpose of its enforcement, as if the plaintiff's object was merely to obtain some security, or to prevent some other levy being made in advance of his own, or to hinder or delay other creditors of the debtor, then the levy under the writ of attachment must be adjudged fraudulent and void. Here the most incriminating circumstance is that, in the instructions given to the sheriff, the goods and chattels, after seizure, were to be left "in the possession of their present custodian." The articles referred to were the office furniture of the defendant, and it was not contemplated by the plaintiff that these goods and chattels were to be removed or sold by the debtor, nor that the defendant could continue to exercise the full powers of ownership, but the debtor's use of this property was merely an incident of the custody, whose primary purpose was to save costs and expense, and diminish the injury and risk of damages because of the levy, which, in an attachment on warrant against a

non-resident corporation, would ordinarily be dormant until a judgment of condemnation be obtained in the attachment proceedings, when a sale could be had under an execution. *Hodge and McLane on Attachment,* secs. 71, 72, 125. *West v. William E. Wood Co.,* 140 Md. 520, 118 A. 69. Whatever delay in the progress of the procedure, or indulgence in time granted to the debtor by the creditor, was in a reasonable effort to refrain from embarrassing the attempt of the debtor to meet its obligation to the plaintiff. So it is apparent from this record that no abuse of the writ was intended, and hence there was no constructive abandonment of the levy. Nor do the circumstances justify the inference that the sheriff, after making the levy, had surrendered his possession under the writ. The return was that the goods levied upon were "left where found at risk of plaintiff, as per order of plaintiff's attorney," and therefore resort must be had to this order, which, when read in connection with the return, makes clear that, after the levy, the goods were not simply left on the premises by the sheriff, but left by that officer in the voluntary possession of the agents of the defendant as the sheriff's bailees, keepers, or representatives, so that the sheriff could have gone back to the premises and received or resumed possession of the goods, and removed them from the premises, in execution of the writ of attachment, without thereby becoming a trespasser. *Ginsberg v. Pohl,* 35 Md. 505, 509, 510. Furthermore, whatever may be the especial effect between the creditor and the officer, with reference to the latter's liability to the creditor by reason of its direction who should become the bailee of the goods seized, and the sheriff's acceptance of this direction, the sheriff must execute the writ according to its command and nature, and the sheriff was bound to take into his custody the goods, and his action in selecting the nominee of the creditor as his bailee was on his official responsibility, and made him liable, at least, to any third party who might sustain loss by reason of any default in the manner in which the writ was executed. *Corner v. Mackintosh,* 48 Md. 374, 386; *Freeman on Executions* (3rd Ed.), sec. 261.

This review of the principles of law applicable, and of the Maryland authorities, require an affirmance of the chancellor's decree on the ground that, at the time of the attempted distress for rent, which had become both due and in arrear after the levy on the goods and chattels under the attachment, the goods and chattels in question were then in the custody of the law by virtue of the prior levy under the unabandoned writ of attachment.

*Decree affirmed, with costs to the appellee.*