ALEXANDER FISHER, WILLIAM D. MILLER, AND WILLIAM E. MAYHEW, JR. *vs.* WILLIAM F. JOHNSON.—*June*, 1848.

Arrears of rent due a landlord, of which the sheriff had notice by a due warrant of distress, before sale, cannot be retained for the use of such landlord, by such sheriff, out of the proceeds of the goods of a stranger levied upon, while, on the demised premises, under a writ of attachment, to compel an appearance at law, the same goods having been duly condemned, and afterwards sold by *fieri facias*, under the judgment of condemnation.

APPEAL from *Baltimore* County Court.

On the 4th of August, 1846, the appellants sued out a warrant of attachment, to recover from *Samuel Comly*, a non-resident, the sum of $3,511 66. The attachment was returned.

"Laid in the hands of *William F. Johnson*, on the 12th of August, 1846, and attached as per schedule. *Comly* not appearing, judgment of condemnation, *nisi*, was rendered on the 13th of the same month, and *William E. Mayhew* gave the usual confession, to make restitution within a year and a day, &c.

The appellants then sued out a writ of *fieri facias*, and on the 6th of March, 1847, the parties agreed as follows:—

It was admitted, that on the 4th August, A. D., 1846, the plaintiffs sued out of *Baltimore* County Court a writ of attachment on warrant, against the defendant, founded upon a certain draft for $3,500, dated the 14th July, A. D., 1845, and payable twelve months after date, drawn by the defendant, upon *Messrs. Comly Bros., Baltimore*, in favor of a certain *T. J. Folwell*, accepted by *Messrs. Comly Bros.*, and by *T. J. Folwell*, endorsed to the plaintiffs. That the plaintiffs were, at the time of suing out said writ, commission merchants residing and doing business in the city of *Baltimore*, by the name of *Fisher, Miller & Co.;* and that the defendant was, at that time, a citizen of the state of *Pennsylvania*, residing in the city of *Philadelphia*, as was also the payee of said draft, said *J. J. Folwell*. That the *Messrs. Comly Bros.* were, up to a short period before suing out said writ, (as hereinafter stated,) calico

printers and manufacturers, residing and doing business in *Baltimore* county, upon a certain tract of land commonly known as the "*Forkland Print Works*," belonging to a certain *William Fell Johnson*, a resident of *Baltimore* county aforesaid; which tract of land, together with the improvements, consisting of mills, store, dwelling houses, and other buildings, the said *Johnson* had leased to the said *Comly Bros.*, (that is to say, to certain *Samuel Comly, Jr., and Nathan F. Comly, trading as Comly Bros.,*) by lease dated the 2d October, A. D., 1845, duly recorded among the land records of *Baltimore* county. That under said lease, said *Comly Bros.* took possession of the said premises, and by the terms thereof, were to hold and enjoy the same for the space of nineteen years and six months from the date thereof, yielding and paying to said *Johnson*, his heirs and assigns, an annual rent of $1,800, payable in semi-annual instalments of $900 each, on the first days of April and October in every year; which rent, said *Comly Bros.*, by the terms of said lease, covenanted to pay, although *there was no provision in said lease contained for re-entry or distress*, or other remedy of any kind by said *Johnson*, in case of failure to pay the same, at the time and in the manner therein specified. That said *Comly Bros.* took possession of said premises under the said lease, at the time of the date thereof, and so continued in possession, engaged in their business of manufacturing as aforesaid, up to the month of March, A. D., 1846, at which time they failed in their said business, and stopped payment of their obligations. That on the 13th March, A. D. 1846, the said *Comly Bros.*, it appearing by their books that they were then very largely indebted unto the defendant, sold to him, as appears by the entries and charges upon their said books, all the personal property on the said premises, except the furniture hereinafter mentioned, being certain machinery and fixtures in the mills, and certain goods in the store upon the said premises, the said defendant being credited on said books with payment of the same, according to an inventory and statement of the amount and value of the said personal property.

That subsequently, to wit: on the 30th May, A. D., 1846, the said *Samuel Comly, Jr.,* and *Nathan F. Comly,* trading as aforesaid, as *Comly Bros.,* applied for and obtained the benefit of the insolvent laws of *Maryland.* That under said application, certain *Samuel H. Tagart* and *John H. Ing* were appointed the permanent trustees of said *Samuel Jr.,* and *Nathan F. Comly,* and on the 27th July, A. D., 1846, said permanent trustees made sale, under a standing rule of *Baltimore* County Court, of all the property of said insolvents which had been mentioned in their schedule, and come into possession of the *said trustees,* to wit: their interest in the lease aforesaid, from *William Fell Johnson,* which was purchased from the said trustees at said sale, subject to the payment by the purchaser of all rent then in arrear by one *Joseph P. Pancoast,* for the sum of sixty-five dollars; and said sum being paid to the said trustees, an assignment of said lease was, by them executed and delivered to said *Pancoast,* a resident of *New Jersey.* That said *Comly Bros.,* after their sale as aforesaid, discontinued their business upon the said premises, but continued to reside in a certain dwelling house upon the same, until the 10th December, A. D., 1846, at which time they removed from the same, carrying with them certain furniture of the value of about $300, which had been, during the period of their residence upon the said premises, up to the time of their removal therefrom, as aforesaid, in the said dwelling house on said premises, undistrained by the said *Johnson.* That the said defendant, after the sale to him as aforesaid, suffered the said property so sold, to wit: certain machinery and fixtures in the mills, and certain store goods in the store upon the said premises, to remain upon the said premises; and the same were on the 5th August, A. D., 1846, seized upon and taken by the sheriff of *Baltimore* county, as and for the goods of the defendant, under and by virtue of the writ of attachment, sued out by the plaintiffs as aforesaid. That the said sheriff, by the directions of the plaintiffs, left the said goods, after the levy, upon the said premises, and appointed a deputy sheriff to take charge of and watch the same, having previously, according to law, made, at the time of said levy, an

appraisement and schedule of said goods, and returned the same as levied per schedule. That said goods remained in custody of the sheriff, by his deputy, upon the said premises (being bulky and incapable of removal, without great labor and expense,) until the 16th December, A. D., 1846, when they were sold by the said sheriff under a writ of *venditioni exponas,* issued out of *Baltimore* County Court, on the 30th November, A. D., 1846, upon an absolute judgment of condemnation of said goods entered in this cause on the 27th November, A. D., 1846, a judgment of condemnation *nisi* having been entered in said cause on the 13th November, A. D., 1846, and no claim interposed or cause shewn against making said judgment absolute, it was accordingly, so entered as aforesaid; and that the gross amount of sales of said goods, as made by the sheriff under the writ aforesaid, was $3,980 46, out of which, said sheriff claimed for his poundage fees, the sum of $121 17, beside expenses of advertising and sale, leaving a nett amount in his hands, after deducting his poundage fees and expenses of sale and watching said goods, of $3,366 89.

And it is further admitted, that there was due to said *William F. Johnson,* landlord of the said premises, for rent under the lease aforesaid, on the 1st April, A. D., 1846, the sum of $730, which sum remained due and unpaid up to the 1st October, A. D., 1846, when a half year's rent, to wit: $900 fell due under the lease aforesaid, making in all, the sum of $1,630, for rent in arrear, due on the 1st October, A. D., 1846, which sum remained in arrear and unpaid up to and at the time of the sale of said goods by the sheriff, as aforesaid, and their removal from said premises, which removal took place a few days after said sale. That before the sale and removal of said goods, and after the 1st October, A. D., 1846, the said *William F. Johnson* notified the said sheriff of his claim for rent as aforesaid, by placing in the hands of the said sheriff a distraint warrant for the amount of said claim for rent, and notice of the rent due him, accompanied by an affidavit, which warrant was not executed, or any proceedings taken thereunder by the said sheriff.

It is further admitted, that on the 6th March, A. D., 1847, the said *Johnson* filed a petition in said court in the cause aforesaid, setting forth his said claim for rent, claiming to be paid the same out of the proceeds of sale in the hands of the said sheriff as aforesaid, and praying a rule upon the said sheriff to shew cause why the amount of said claim should not be paid to him, the said *Johnson*, out of the said proceeds. That a rule to shew cause, as prayed, was granted by said court on the said 6th March, A. D., 1847.

Whereupon the plaintiffs appeared on the said 6th March, A. D. 1847, and shewed for cause, against making the said rule absolute, that the said *Johnson* was not entitled to the sum of $1,630, as claimed by him as aforesaid.

1. Because said *Johnson* was not entitled, in law, to claim any portion of the rent due him out of the proceeds of sale in the hands of the sheriff as aforesaid.

2. Because said *Johnson* was not entitled to claim, out of said proceeds, such part of the rent due him as fell due after the levy of the sheriff, made as aforesaid.

3. Because said *Johnson* was not entitled to claim said rent, free from the payment of a rateable proportion of the sheriff's poundage fees and expenses incurred in making sale of said goods.

4. Because, for other good and sufficient reasons, said *Johnson* was not entitled to claim and receive, out of the proceeds of sale as aforesaid, the sum of $1,630, as claimed by him.

· Whereupon, it was agreed between the plaintiffs and the said *Johnson*, and the said sheriff, that all questions arising, or to arise out of the claim made by said *Johnson* in this cause, should be submitted to the court aforesaid, upon a written statement of facts; in comformity with which agreement, this statement is prepared by assent of said parties, and is herewith filed. And it is further agreed, that no objection shall be made by any party to this agreement, to the right and jurisdiction of said court, to hear and adjudge all questions arising upon the aforegoing statement of facts, together with all presumptions and inferences legitimately deducible therefrom, and to order

distribution of the said funds in the hands of the sheriff as aforesaid. That nothing herein contained shall be construed, to deprive any party to this agreement of his or their right to an appeal from the determination and order of said court; and that upon such appeal, as well as at the hearing of this court, all objections to matters of form are expressly waived.

The County Court, (LE GRAND, A. J.,) delivered the following opinion:

" The material and most important question which this court is now called upon to decide, is:—Does the statute of 8 *Anne*, chapter 14, refer to executions issued against property of a stranger, which may happen to be on the demised premises, as well as to executions issued against the property of the tenant? I confess, on looking at most of the text books and the reports therein referred to, I was inclined to the opinion, that the statute only intended to refer to executions issued against the goods of the tenant. Prior to the passage of the statute of *Anne*, by the common law, when an execution was levied upon the tenant's goods, the landlord lost his rent, and could not enter to distrain; although the landlord had the right to distrain the goods of a stranger, if found on the demised premises, yet he had not the right to follow them beyond the premises, as he had in regard to the goods of the tenant. If the stranger succeeded in getting his goods off the premises, the right of the landlord to distrain was gone. All the elementary works, with the exception of that of *Archbold* on the law of landlord and tenant, as well as the forms, seem to contemplate the statute of *Anne* as only referring to executions issued against the goods of the tenant. This circumstance, connected with the apparent injustice of making one man pay the debts of another, inclined me to the opinion, that the statute of *Anne* was only intended to relieve the landlord from the common law principle. That the goods of the tenant in *custodia legis*, could not be distrained, or the rent of the landlord paid before they were so placed, and not to have reference to the goods of a stranger. From the character of the question, it would be reasonably supposed to have frequently arisen both in *England* and in this country;

but such has not been the case.    The only cases in which, so far as I have been able to ascertain, where the question has at all been considered, are those of *Foster vs. Cookson*, 41 *Eng. C. L.* 606, and *Russell vs. Doty*, 4 *Cowen*, 576.    In the first of these there is a mere *dictum* of *Justice Patterson*, that the statute was designed to extend to *all* executions, whether issued against the goods of a *stranger*, or of the *tenant*, provided they were on the demised premises.    In the other, the question arose under the statute of *New York*, (*I. R. S.* 437,) which provides that "no goods or chattels whatsoever, in or upon the demised premises, shall be liable to be taken by virtue of any execution."

. The Supreme Court of *New York* held, that this statute did *not* refer *only* to executions against the goods of the tenant, but to those against the goods of a *stranger* also.

The language of 8th *Anne*, chapter 14, is almost identical in words with the *New York* statute, and is so in its substance. The words are: That no goods or chattels whatsoever, lying or being in or upon any messuage, lands or tenements, which are or shall be leased for life or lives, term of years, at will or otherwise, shall be liable to be taken by virtue of any execution, on any pretence whatsoever, unless, &c., &c.

This being so, in deference to the *dictum* in *Forster vs. Cookson*, and the adjudication in *Russell vs. Doty*, I shall hold, the landlord is entitled to his year's rent.    Of the rent, there was due six months on the 1st April, 1846, and six more months on the 1st October of the same year.    The attachment was levied on the 4th August, 1846.    An attachment, under an attachment system, is not such an execution as is contemplated by the statute of *Anne*, but the *fi. fa.* which issued in the judgment is such an one.

It is therefore ordered, this 23d March, 1847, that the sheriff of *Baltimore* county pay to *William Fell Johnson*, or his counsel, the sum of $1,630, less $16 30; to be paid to clerk of *Baltimore* County Court, under act of 1841, ch. 271, (being amount of rent due him up to the 1st October, 1846,) out of

the proceeds of sale now in his hands, realized from the sale under the *fi. fa.*, issued heretofore in this case.

The plaintiffs—the attaching creditors—appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J., at December term, 1847.

By W. F. FRICK and ALEXANDER for the appellants.

That the appellee, *Johnson,* was not entitled to the amount of rent paid to him under the court's order of the 23d March, 1847.

1st. Because the statute, 8 *Anne, ch.* 14, applies only to cases where the goods of the tenant are taken in execution; and not to a case like the present, where the goods of a stranger upon the demised premises, are taken by process of law.

2d. Because a proceeding by attachment, under our act of 1795, ch. 56, is not an execution within the meaning of the aforesaid statute of 8 *Anne;* and the landlord, in such case, acquires no right to payment of his rent before a removal of the goods.

3d. That if the landlord acquires no right to payment of his rent, by and at the time of the taking of the goods under a writ of attachment, he cannot acquire any by proceedings subsequent to the writ; whereby the goods taken are condemned and sold.

4th. That the landlord, under the *statute of Anne* aforesaid, is not entitled to any rent, except what is due at the time of taking the goods, and not to rent subsequently falling due, while the sheriff is in possession; and therefore, that if the appellee in this case is entitled at all, he can recover only the rent actually due at the time of taking the goods by the sheriff, under the writ of attachment.

By WILLIAM F. GILES for the appellee.

1st. That under the statute of 8 *Anne*, ch. 14, sec. 1, the landlord is entitled to be paid his year's rent, without any deduction for poundage fees.

2d. That an attachment against the non-resident, or absconding debtor, is not an execution within the meaning of the said statute, but that the *fieri facias* which issues after judgment of condemnation is.

3d. That therefore in this case, the landlord was entitled to his year's rent, due the 1st October, 1846.

4th. But if the court should be of opinion, that an attachment is an execution within the meaning of said statute, and suspended the landlord's right to distrain, then, as the possession of the premises was held by the sheriff, (by the appellants' direction,) up to the 10th December, 1846, and the proceeds of sales were in the sheriff's hands to be distributed; the sheriff was bound to pay the landlord, not only the one month's rent in arrear, when the attachment was laid, but for the use and occupation of the premises, from the taking of the goods under the attachment, until the sale under the *fieri facias*; and that it was fully equal to the amount of the rent which the court directed to be paid.

5th. That the statute applies to all cases where, under an execution, property is seized on demised premises, on which the landlord had a right to distrain; no matter to whom the property belongs, or against whom the execution may have issued.

By the court,

JUDGMENT REVERSED.