## C. EMERICH MEARS *v.* WASHINGTON PERINE ET AL., TRUSTEES.

[No. 22, October Term, 1928.]

*Decided November 16th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*Richard E. Preece,* with whom were *Willis E. Myers* and *Leon H. A. Pierson* on the brief, for the appellant.

*John M. Butler,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

E. Glenn Perine during his lifetime was the owner of premises situated in Baltimore City known as No. 209 North Liberty Street, which property was, at the time of the distraint and the filing of the petition, which are the subjects of this appeal, owned by the appellees as trustees under the provisions of E. Glenn Perine's will. On January 11th, 1921, Perine demised the premises to Joseph Mann, trading as the Mann Piano Company, for the period of five years from July 1st, 1921. With the consent of Mr. Perine, Mann, on November 7th, 1921, assigned this lease to Harry W.

Meier; and on December 8th, 1921, Perine leased and demised the same premises to Meier for an additional term of five years beginning July 1st, 1926, the date of the termination of the first lease. Under the terms of both leases the rent was a specified annual sum, to be paid in equal monthly instalments. The rent under the first lease was to be paid at the end of each month, while under the second the monthly instalments of rent were payable in advance. On June 6th, 1924, while in possession of the premises under the assignment from Mann, Meier and wife executed a mortgage upon certain fee simple real estate owned by them situate in Baltimore City, and also upon certain chattels located in the said premises known as No. 209 North Liberty Street, to the appellant, to secure the repayment of $4,000 that day loaned by the appellant to Meier. This mortgage contained a covenant consenting to the passage of a decree for the sale of the property, real and personal, described in the mortgage, at any time or place, upon default of any covenant or condition thereof. On February 6th, 1926, Meier assigned both leases to Louis Hanges, who accepted the same and took possession of the premises. Perine being then deceased, these assignments were consented to by the appellees, the trustees under the provisions contained in his will. On June 30th, 1926, the rent for that month, amounting to $583.33 1/3, under the terms of the first lease, became due, and on the next day, July 1st, the first month's rent (payable in advance) under the terms of the second lease, amounting to $625, also became due. The mortgagors being in default, the appellant instituted foreclosure proceedings in the Circuit Court No. 2 of Baltimore City on July 20th, 1926. On that date the court passed its decree appointing a trustee to make sale of the chattels mentioned in the mortgage, in which decree it was provided that before making sale the trustee should file an approved bond in the penalty of $4,000, and give notice of the sale for at least ten days, by advertisement in a daily newspaper published in Baltimore City; and that "the mortgagors forthwith deliver to the said trustee the chattels in said mortgage mentioned." The trustee complied with the

terms of this decree, sold the chattels on August 3rd, 1926, and by his report to the court showed a balance in his hands of $1,131.69, after deducting the expenses of sale. The property remained in the demised premises until sold. On July 28th, 1926, the appellees undertook to distrain the goods and chattels upon the demised premises (being those covered by the mortgage), but learning of the appointment of the trustee by decree of the equity court, no actual levy was made, although the distress warrant was in the hands of the constable, together with an account showing rent due and unpaid amounting to $1,208.33. On August 2nd, 1926, the appellees filed their petition in the mortgage foreclosure case, upon which petition the court passed an order requiring the trustee to show cause why the appellees' claim for rent should not be paid from the proceeds of sale of the mortgaged chattels before distribution was made to other parties. This petition was answered, and an agreed statement of facts filed. Subsequently the court passed its decree, wherein the trustee was directed to pay over to the appellees the amount of the proceeds of sale of the mortgaged chattels, less certain expenses specified in the decree. The appeal here is by the mortgagee of the chattels from that decree.

From the above statement it is seen that we have here a case differing in its facts from any heretofore passed upon by this court, and presenting for decision a question of law which, so far as we are advised by counsel, or disclosed by our examination, has not been the subject of final adjudication in this state. Chattels of a stranger, covered by a mortgage, are located on the demised premises for which rent is due and in arrears. No attempt is made by the landlord to distrain until after a default has occurred in the covenants of the mortgage, and after a court of equity has decreed a sale of the property, appointed a trustee for that purpose, and ordered that the mortgagor deliver possession to the trustee; also after the trustee has filed his bond, taken possession of the property by receiving the key to the building wherein the chattels are located, and advertised them for sale, all in conformity with the terms of the decree. The landlord then

60

begins distress proceedings by signing the warrant and delivering it to the bailiff or constable. So far as the record discloses, nothing further was done in the distress proceedings. Shortly thereafter the landlord filed a petition in the equity court, praying that the trustee be required to pay the rent out of the proceeds of sale of the mortgaged chattels before distribution to the mortgagee. The question therefore is: As between the landlord and mortgagee, which is entitled to the proceeds arising from the sale of the chattels and now in the hands of the trustee

The appellee admits that at the time the distraint was attempted to be executed, the property of Meier, while being upon the demised premises, was *in custodia legis,* and therefore was not liable to be taken by distress proceeding. Of the correctness of this view we have no doubt. The property was in the legal custody of the trustee appointed by decree of the equity court, whose duty under the decree was to sell the same in accordance with the terms of the decree and report his action to the court for ratification. The court, therefore, through its officer, was in possession of the chattels in question, which situation prevented the landlord from taking the property under distress. It is so firmly established by decisions of this court that goods *in custodia legis* cannot be distrained for rent, that we deem it unnecessary to refer to more than a few of these cases. *Buckey v. Snouffer,* 10 Md. 149; *Fox v. Merfield,* 81 Md. 80; *Gaither v. Stockbridge,* 67 Md. 222; *Calvert Bldg. & Constr. Co. v. Winakur,* 154 Md. 519. The view taken by the lower court, and the real contention made by the appellee, is that the trustee in this case occupies a similar position to that of a receiver appointed by an equity court, and that under the established practice the court, upon petition to it, should allow the landlord to distrain for his rent, or direct that the trustee pay the rent out of the proceeds of sale, relying upon the case of *Gaither v. Stockbridge, supra,* as authority for this contention. In that case our predecessors, speaking through Chief Judge Alvey, said: "In those cases where the goods of the lessee are remaining on the demised premises at or after the time when

the rent becomes due, and the landlord seeks to exercise his right to distrain, and the only impediment to the exercise of that right is the possession of the court, by its receiver, it seems to be a settled rule of practice to order the receiver to pay the arrears of rent out of the proceeds of the property, or to permit the landlord to proceed with his distress, notwithstanding the possession of the receiver." As we understand it, the practice approved by that language is now followed throughout the state.

The cases of *Buckey v. Snouffer* and *Fox v. Merfield, supra,* distinctly hold that where property of a tenant is in the hands of an insolvent trustee before the landlord has acquired a lien by an actual levy made in pursuance of the distress warrant, he has no such lien as constitutes him a preferred creditor in the distribution of the insolvent's estate, but must participate only as a general creditor. The appellees' contention is that, in order to determine whether the mortgagee or the landlord is entitled to the proceeds of the sale here, we must decide whether a trustee appointed by a court of equity, to foreclose a mortgage on chattels, is to be considered as occupying the position of a receiver, or is he analogous to a trustee in insolvency; that if his position is that of a receiver, the rule adopted in *Gaither v. Stockbridge* is applicable, while if his position is equivalent to that of an insolvency trustee, the cases of *Buckey v. Snouffer* and *Fox v. Merfield* would govern. We are of the opinion that a determination of that question does not control the decision here, for if we assume that the trustee occupies the position of an ordinary receiver, still the doctrine established by *Gaither v. Stockbridge* would not apply, because the facts upon which it rests are not present in this case. In that case Stockbridge was the receiver for the *tenant's* property, while here the trustee under the decree takes possession of the property of a *stranger* for the specific purpose of satisfying the debt for which it was pledged as security. It will be seen that there is a vital distinction between the two cases, in that one was dealing with the property of the tenant in the hands of a receiver, while the other was dealing with a stran-

ger's property; and in the above quotation from Judge Alvey's opinion the language used in laying down the doctrine is, "in those cases where the goods of the *lessee* are remaining on the demised premises." If, then, assuming that the trustee here were a receiver as in that case, the doctrine still would not be applicable or controlling, because the goods here in question were not those of the lessee but those of a stranger.

It is true that goods and chattels liable to distraint are not confined to those of the tenant, but any chattels, which may happen to be upon the demised premises at the time rent becomes due, may be sold under distraint proceedings for payment of the rent; and this is so, whether they belong to the tenant, subtenant, or a stranger, and without regard to whether they are subject to a mortgage. *Swartz v. G. B. S. Brewing Co.*, 109 Md. 398. The Act of 1927, ch. 699, providing exceptions to the rule as above stated, has no application to this case, it having been passed subsequently. The mere right of a landlord to distrain ordinarily does not create a lien, and this lien can only be acquired by an actual levy under a distress proceeding made in conformity with the provisions of law governing the same. There is an exception to this rule provided by the statute of 8 *Anne* ch. 14, which requires that the landlord be paid rent in arrears, not exceeding one year, before the goods taken in execution on the premises can be removed. In order for the statute to apply, there must be an execution, and this execution must be against the tenant's goods; it having been held by our predecessors, in the case of *Fisher v. Johnson*, 6 Gill, 354, that arrears of rent due a landlord, of which the sheriff had notice by due warrant of distress, before sale, cannot be retained for the use of such landlord by such sheriff out of the proceeds of the goods of a stranger levied upon while on the demised premises.

There can be no doubt that, if the landlord had perfected his lien by actual levy upon the goods while on the premises, and before they were *in custodia legis,* they would have been responsible for the rent; and it is equally true that if the

goods had been removed from the premises before any distress proceeding, they would not have been liable; section 19 of article 53 of the Code, permitting a landlord to follow goods removed from the premises, applying only to goods of the tenant so removed, and having no application to those of a stranger. It will thus be seen that, while a stranger's goods upon the premises, distrained by an actual levy being made, are in the same position as if they belonged to the tenant, so far as the landlord having a right to sell them for the purpose of collecting the rent, there is a marked distinction made by this court in construing the statute of 8 *Anne* and section 19 of article 53 of the Code, between cases where the property was that of the tenant and where it belonged to a stranger. The reason for this distinction is obvious and logical. In the case where the stranger's goods are on the premises, and actually levied upon by the landlord for his rent, they are allowed to be taken, to prevent fraud which might be perpetrated by the tenant if the burden were placed upon the landlord to prove that the goods distrained, although upon the premises, actually belonged to the tenant; but where they had been removed from the premises, or an execution had been levied by a third party, in order that the landlord might either follow the goods so removed, or be entitled to his rent before the execution creditor could remove them, he is and should be required to show that the goods so removed or so levied upon are the goods of the tenant. If the goods taken in execution by the third party are the tenant's, there is presented a case where the tenant is indebted to two parties, the landlord for his rent, and the execution creditor for the amount of his judgment, and in such case the landlord is preferred over the execution creditor by the statute of *Anne* to the extent of one year's rent in arrears. But in the case where the execution is levied upon the goods of a stranger which happen to be upon the demised premises, and which the landlord has failed to make responsible for his rent by an actual levy, under distress, before the execution, we have a case where the owner of the goods is not indebted to the landlord at all, but is indebted to the execution

creditor, and it is no hardship upon the landlord to require that, if he proposes to make a stranger pay the tenant's rent, he should actually levy his distress before the *bona fide* creditor of the stranger takes charge of the goods under an execution. So in this case, if the proceeds of sale are applied to the rent, it is compelling the stranger or the stranger's mortgagee to pay the rent; and it is no hardship upon the landlord not to allow this, if he by lack of diligence failed to distrain the stranger's goods on the premises before the goods came *in custodia legis*. The doctrine laid down in *Gaither v. Stockbridge* is not in conflict with this view, because that doctrine is expressly limited, by the language used, to goods of a lessee or tenant; and we have found no case where the receiver of a stranger has been directed to pay the landlord rent, even though the goods of the stranger, or some portion thereof, had been located upon the demised premises, unless the landlord had completed his distress by an actual levy before the appointment of the receiver and while the stranger's goods were on his premises.

It follows from what we have said that in our opinion the landlord's claim for rent should not have been allowed, and the proceeds of sale are properly distributable to the mortgagee. Therefore the decree of the lower court must be reversed.

> *Decree reversed, and case remanded, that a decree may be passed in conformity with the views herein expressed, with costs to the appellant.*