## MERIT LOAN SERVICE, INC., *v.* MORITZ GROSSMAN.

[No. 39, October Term, 1933.]

*Decided January 9th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Abraham Davidson,* for the appellant.

*Joseph Fax,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

According to the agreed statement of facts in this case, the appellee, Moritz Grossman, leased the store and basement at 1440 East Fayette Street, Baltimore, to Harry B. Bogash and Clara Bogash, his wife, for the term of five years beginning January 1st, 1928. On May 24th, 1932, the lessees gave a mortgage to the appellant, Merit Loan Service, Incorporated, of certain chattels on the demised premises to secure the payment of $300. One of the lessees, Harry B. Bogash, was a bankrupt on October 24th, 1932. "The Merit Loan Service received permission from the receiver in bankruptcy to proceed with the foreclosure in the Circuit Court No. 2, and under the arrangement that after payment of the expenses incident to the foreclosure and after the payment of the mortgage debt and interest any balance on hand as proceeds of the sale would be turned over to the receiver or

trustee in bankruptcy." On November 29th, 1932, Abraham Davidson was appointed trustee to make sale of the mortgaged property, and proceeded to advertise the property for sale, which was reported as sold on December 12th, 1932, at $516.05, and the sale ratified on December 16th, 1932. Three days before the day set for the sale, December 9th, 1932, the landlord, Grossman, filed a petition setting forth the fact that there was due and owing from the lessees to December 1st, 1932, rent amounting to $835, and praying that Abraham Davidson, trustee, show cause why the rent claim should not be satisfied out of the proceeds of the sale before distribution to the appellant's mortgage debt. The appellant answered, and the question of priorities involved was submitted on the agreed statement. The decision being in favor of the rent claim, which consumed the entire proceeds of sale, the mortgagee appealed.

The question for decision is whether the rule in cases of receivers or trustees in favor of landlords, as stated in *Gaither v. Stockbridge,* 67 Md. 223, 226, 9 A. 309, or such as arises in insolvency where no distress has been levied, shall be applied. The chancellor held the former.

No question of joint ownership by the husband and wife of the mortgaged property appears to have been raised before the chancellor, nor presented here, and we shall therefore treat Harry B. Bogash as sole owner of the mortgaged property. Code, art. 5, sec. 10.

There is no evidence in the record that the appellee had levied a distraint on the mortgaged property when Bogash was adjudicated a bankrupt. It was long ago, in 1856, settled in this state by a two-one decision in *Buckey v. Snouffer,* 10 Md. 149, that, when a tenant applied for the benefit of the insolvent laws, if a distraint had not been laid against his goods, the property was then beyond the reach of the landlord, and this rule has been adopted by the District Court of the United States for the District of Maryland. *In re Southern Company of Baltimore City* (D. C.), 180 Fed. 838; *In re Chaudron & Peyton,* 180 Fed. 841; *Calvert Building & Construction Co. v. Winakur,* 154 Md. 519, 527,

141 A. 355; *Mears v. Perine,* 156 Md. 56, 61, 143 A. 591; *Alexander's British Statutes* (Coe's Ed.), 925. The status of a landlord who has failed before his tenant's bankruptcy to levy a distraint under his *quasi* lien conferred by the Statute of 8 Anne, ch. 14, and Code, art. 53, secs. 9. 11, is that of a general creditor, and this was the condition of the appellee's rent claim when Bogash was adjudicated a bankrupt in the federal court. He had not only lost his *quasi* lien for his rent, but was forbidden to exercise his right to distrain. It was not, however, the situation with respect to the appellant's mortgage; it was a lien on the bankrupt's goods when he went into bankruptcy. It was then preferred and secured, but the landlord was neither preferred nor secured. The question then is, Was the mortgage of the appellant subordinated to the landlord's claim for rent when the mortgagee was permitted by the receiver in bankruptcy to foreclose?

The appellee relies for his contention on the rule as stated in *Gaither v. Stockbridge,* 67 Md. 222, 9 A. 632, 633, 10 A. 309, that: "In those cases where the goods of the lessee are remaining on the demised premises at or after the time when the rent becomes due, and the landlord seeks to exercise his right to distrain, and the only impediment to the exercise of that right is the possession of the court by its receiver, it seems to be a settled rule of practice to order the receiver to pay the arrears of rent out of the proceeds of the property, or to permit the landlord to proceed with his distress, notwithstanding the possession of the receiver." If the bankruptcy in the federal court, which had jurisdiction of the tenant's property and of all claims of every kind against him, had not intervened, the rule as stated in *Gaither v. Stockbridge* would be applicable, and the landlord could, in the manner therein set forth, have asserted his right and have had his priority over the chattel mortgage. The general purpose of the Federal Bankruptcy Law and its effect on liens created or acquired more than four months prior to the filing of the petition in bankruptcy is so clearly stated by

Justice Roberts in *Straton v. New*, 283 U. S. 318, 320, 51 S. Ct. 465, 466, 75 L. Ed. 1060, 1086, that it will bear repetition here, and that is: "The purpose of the Bankruptcy Law * * * is to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. This jurisdiction is exclusive within the field defined by the law, and is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition. * * * It follows that liens cannot thereafter be obtained nor proceedings be had in other courts to reach the property, the district court having acquired the exclusive right to administer all property in the bankrupt's possession. * * * It may inquire into the validity of liens, marshal them, and control their enforcement and liquidation. * * * The bankruptcy law contains no express provision preserving liens acquired by legal proceedings more than four months before the petition is filed. But it is clearly implied that they shall be saved from the operation of the law, for section 67f [11 U. S. C. A., sec. 107 (f)] voids only liens obtained by legal proceedings within that period. It has consequently been held that those acquired earlier, if valid under state law, are preserved, and will be accorded priority by the bankruptcy court in distribution of the estate, in accordance with applicable local law."

It is true a mortgage is not a lien "acquired by legal proceedings," but the rule that priority in distribution will be accorded to liens existing at the time of the bankruptcy, except to those acquired by judicial proceedings within four months "in accordance with applicable local law," would in principle apply to the instant case as well.

When a trustee or receiver in bankruptcy finds the estate incumbered with mortgages, any of three courses is open to him: (1) If the equity of redemption has any value to the general creditors, he can sell the mortgaged property subject to the lien of the mortgage; (2) he may, after notice to the

mortgagee, sell the property free and clear of the mortgage; or (3) if satisfied that the equity of redemption has no value, he may, with the approval of the bankruptcy court, allow the mortgagee to proceed with his foreclosure in the state court. See cases collected and annotated to *Isaacs v. Hobbs Tie & Timber Co.*, 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645.

A test as to whether the landlord's lost or neglected right to a lien for rent is restored by returning the foreclosure to the state court would be inferred from the interest the bankruptcy trustee has in the proceeds of sale of the mortgaged property. When one goes into bankruptcy, his trustee's duty never ends until the proceeds of his property are distributed to those legally entitled under the Bankruptcy Act. When a foreclosure is had in the state court, whether begun before the bankruptcy and concluded afterwards, or begun after the bankruptcy, with the consent of the trustee on an order of the bankruptcy court, the trustee is the holder of the equity of redemption for the benefit of the bankrupt's general creditors, and as such is entitled to any excess of the proceeds of sale after the mortgage debt is satisfied. *Carling v. Seymour Lumber Co.* (C. C. A.), 113 Fed. 483, 491, a petition for writ of *certiorari* being denied in 186 U. S. 484, 22 S. Ct. 943, 46 L. Ed. 1261; *In re Ogilvie* (D. C.), 295 Fed. 567; *In re Soltmann* (C. C. A.), 249 Fed. 455; *In re Arden* (D. C.), 188 Fed. 475; *Neill v. Barbaree,* 135 Ga. 771, 70 S. E. 638.

The agreed statement shows that "the Merit Loan Service received permission from the receiver in bankruptcy to proceed with the foreclosure in the Circuit Court No. 2," and, if there should be a surplus after payment of the mortgage debt, interest and costs, "any balance on hand as proceeds of the sale would be turned over to the receiver or trustee in bankruptcy." What happened was that the mortgagee's sale of chattels brought $516.05, which would, perhaps, have left the bankrupt's estate a small surplus, but instead the landlord came in with a rent claim of $835, which had shrunk to the distributive share of a general creditor by reason of

his neglect or forbearance, and consumed the whole fund. According to the authorities cited and in our opinion, this cannot be done. As said in *Buckey v. Snouffer,* 10 Md. 149, 157: "We do not think that this view of the subject deprives the landlord of any peculiar right. The law has granted him a remedy enjoyed by no other class of creditors. * * * As happens in other cases, the landlord here has lost his preference by delay, and we cannot relieve him without disregarding what we take to be well settled principles of law." The money should be applied to the mortgage debt, interest and costs, and the balance, if any, paid to the trustee in bankruptcy.

*Decree reversed, and case remanded, costs in this court to be paid by the appellee.*