## PIERRE F. WILHEM *v.* ANNA R. BOYD
[No. 18, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*John Wood, Jr.,* for the appellant.

*A. Earl Shipley,* with whom was *Theodore F. Brown* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

During the month of March, 1931, the Taylor Motor Company, the then owner of certain premises located in the town of Westminster, Maryland, and the appellee, who at that time held a mortgage upon the same, leased the said premises to Lloyd A. Bowker for the term of ten years, accounting from the 1st day of April, 1931, at a monthly rental of $135, payable on the first day of each month, in advance. Thereafter, upon default, the appellee foreclosed the mortgage, subject to the terms of the lease, and acquired the fee simple title to the property.

Prior to the negotiations resulting in the lease by Bowker, the appellant sold to him eight bowling alleys and equipment under a conditional sale contract; and, in contemplation of the purchase of said alleys and equip-

ment, the lease agreement provided that, in consideration of the installation of the same upon the demised premises, the lessors would, for themselves, their personal representatives and assigns, release the chattels so installed or placed upon the premises from any lien or claim which might accrue for rent reserved in the lease; but it was expressly stipulated in said lease agreement that such waiver would not apply to rent due and in arrear at any time the appellant determined to remove the alleys and equipment from the premises, provided the lessors gave notice by mail to the appellant of any arrearage in said rent, within one month after any part of the same became due and demandable. Both the lease agreement and the conditional sale contract were duly recorded in the office of the clerk of the Circuit Court for Carroll County. It appears from the record that in September, 1931, four additional bowling alleys and equipment were sold, under like terms and conditions, and subject to the same rental waiver, by the appellant to Bowker; and that the total purchase price for the alleys and equipment was approximately the sum of $12,000.

Although not promptly paid in accordance with the terms of the lease, the rental was collected by the appellee and her predecessor in title to December 31st, 1934; but meanwhile the lessee of the premises was in substantial default in compliance with the terms of the conditional sale contracts; and, as a result of this situation, the lessee, then owing approximately $6,000 under the conditional sale contracts, agreed to surrender all of the alleys and equipment to his vendor.

The original agreement was reached by the vendor and vendee on December 28th, 1934, and was formally executed ad accepted by the parties thereto, as of said date, on the 16th day of January, 1935; and reads as follows:

"Westminster, Md., Dec. 28, 1934.

"To: Saunier-Wilhem Co., Pittsburgh, Pa.

"Being unable to fulfill my contracted obligations to you and in consideration of your agreeing to release me from same, I hereby surrender

to you my whole interest, if any, in the bowling alleys and/or equipment that you furnished me under deferred payment contracts on or about March, 1931, and September, 1931. Consider this your authority to repossess and remove, or repossess and re-sell the same at your earliest convenience.

"You will be responsible for the payment of the rent on the premises (at the rate of $135.00 per month) from Jan. 1st, 1935, to the day the alleys are removed from the building.

"Lloyd A. Bowker.

"G. E. Saunier. (Witness.)

"Accepted Jan. 16th, 1935.

"Saunier-Wilhem Co.

"By P. F. Wilhem."

Subsequent to the aforegoing transaction, the appellant endeavored to sell the installed equipment to the appellee; and he failing in these negotiations, the uncontradicted evidence in the record is that the appellant and the appellee co-operated in an endeavor to find a new lessee for the premises, and a purchaser of the equipment. These negotiations, however, were carried on over a period of more than six months; and they resulting in failure, the appellee, on July 16th, 1935, caused a distraint for seven months rent then due and in arrear, amounting to the sum of $945, to be made upon the first eight alleys and equipment purchased by Bowker, and appraised at the sum of $1,800. Two days later the appellant replevied the chattels distrained. From a judgment in favor of the avowant-appellee for the full amount of the rent claimed and costs, this appeal is taken.

By the amended avowry, the appellee sets forth the seizure of the goods and chattels distrained; the lease of the premises to Bowker; her subsequent acquisition of the fee simple title to the property at a time prior to which the rent for which the distress was made had accrued; her recognition, as landlord, by Bowker; the sale of the chattels by the appellant to the tenant, under the

conditional sale contract, with full knowledge of the existence of the lease on the part of the vendor; their installation upon the demised premises, upon which they remained until replevied; the repossession of said chattels, and the full acquisition of title thereto, on the 28th day of December, 1934, by the appellant; the agreement between Bowker and the appellant, hereinbefore set forth; knowledge of said agreement on the part of the avowant; that the goods and chattels continued to remain upon said premises while the lease was still in force, and at the time of the distraint; and that at said time there was due and owing to the avowant rent which had accrued from the premises at the rate of $135 per month from the 1st day of January, 1935, to the 1st day of August, 1935, amounting to $945.

Upon the overruling of a demurrer to the amended avowry, the appellant filed pleas in substance as follows: (1) That there was no rent in arrears. (2) That at the time of the distress there was no rent due and owing by the plaintiff to the avowant. (3) That the avowant did not demise the premises to the plaintiff. (4) That the plaintiff did not hold and possess the premises under a demise from the avowant. (5) That the property distrained was not distrainable. (6) That the distress was too late. (7) That the paper writing dated December 28th, 1934, set forth in the avowry, does not and cannot inure to the benefit of the avowant, or in any way enlarge effectuate, or establish a right of action or recovery by the avowant as against the plaintiff. (8, 9) The general issue pleas of never promised and never indebted as alleged. And by way of equitable defense: (10) That the tenancy of Bowker was terminated by mutual consent of all parties in interest on December 31st, 1934; that, during the time for which rent is claimed, the premises were untenanted and vacant; that the plaintiff never at any time became the tenant, never had possession of the alleys and equipment except by means of these proceedings, or the key to the premises; and that the avowant meanwhile held both actual and constructive possession

of the premises and equipment. (11) That it was expressly agreed between avowant and plaintiff that from January 1st, 1935, no rent for the premises would be claimed, provided plaintiff would permit the equipment to remain in the premises for the purpose of enabling avowant to more readily re-rent the same; that the plaintiff did comply with said agreement, and permitted said equipment to so remain until it was evident that avowant could not re-rent the premises as contemplated, whereupon avowant, in violation of said agreement, refused to permit the plaintiff to remove the same from the premises.

Issue was joined on the first, fifth, and sixth of these pleas; and by a replication filed to the last equitable plea, the avowant denied that any such agreement was made between the parties, and that she refused to permit the plaintiff to remove the equipment in violation of any such agreement. Demurrers filed to the remaining pleas were sustained.

At the trial below the plaintiff reserved ten exceptions; eight of which related to rulings on evidence, and the two remaining to rulings on prayers. The exceptions in the first named class, briefly, are as follows:

(a) Objection was made to the introduction of the distraint papers by the avowant; and the court, we think, properly admitted the same, for the reason that they formed the very basis of the defendant's avowry. In 1 *Poe's Pl. & Pr.* sec. 254, it is stated: "Avowry * * * answers to a declaration, and is so treated; and as it admits the property of the plaintiff in the goods, and justifies their seizure by way of distress for rent in arrear, the case turns upon the question whether the distress thus avowed was lawful, regular and valid, or not." It would seem that no better evidence could have been adduced before the trial court as to the legality of the distraint than the introduction of the distraint papers.

(b) After the avowant had testified that no rent for the premises had been paid to her from the 1st day of January, 1935, to some time in July, 1935, when the alleys were replevied, she was asked on cross-examination

whether she knew the alleys were covered by a conditional sale contract. Objection to this question was sustained by the court, for the obvious reason that her knowledge of such a fact was immaterial. The apparent purpose of the question was to show that the alleys were not distrainable because of the existence of a conditional sale contract. If, as a fact, the alleys were subject to such a contract, her knowledge or lack of knowledge in that respect would not affect the legal status of the property distrained.

(c) Bowker, the tenant, produced as a witness for the avowant, testified, without objection, to the purchase of the alleys from Wilhem under a conditional sale contract; that the cost of the twelve alleys was about $12,000; and that Wilhem called upon him in December, 1934, for the purpose of effecting settlement. He was then asked, how much Wilhem at that time claimed as the balance due upon the purchase price of the alleys and other equipment. Objection to the question was overruled, and the witness answered: "A little over $6,000 balance." The question was apparently asked for the purpose of establishing the consideration which passed between the vendor and vendee of the alleys when the settlement was made. We think it was material, because the theory of the avowant's case, as shown by the pleadings, was to the effect that the plaintiff repossessed the alleys by canceling the indebtedness.

(d) As the fourth exception involved a question put to the witness Bowker, to which no responsive answer was given, and no motion to strike out the answer was made, we deem it unnecessary to discuss the same.

(e) In the course of the examination of the plaintiff Wilhem, after he had testified that he had warehouse space in Pittsburg in which to store the alleys, and also knew of warehouse space in Westminster, and that Bowker had informed him that the monthly rental for the defendant's premises was $135, he was asked for what amount he could have warehoused the alleys. Objection to the question was sustained; and this forms the basis of the sixth

exception. The question was asked for the purpose of showing the possibility of obtaining storage elsewhere for the alleys, during the period for which rent was claimed, at a lesser rate. As the witness had previously testified that he had told the avowant that he could not leave the alleys on the premises if he had to pay rent, and in view of his testimony as to the availability of other storage space, the conclusion was that he could have obtained storage for less than the rental of the avowant's premises; and we therefore see no injury to the plaintiff by this ruling.

(f) Further testimony by the plaintiff was to the effect that the avowant desired the alleys to remain upon the premises, to the end that a new tenant might be located by her, and the sale of the alleys effected by the plaintiff without their removal. This desire seems to have been met by the plaintiff, who co-operated with the avowant in a joint endeavor to secure both a new purchaser and tenant, respectively; which proved unsuccessful. It appears from the record that on January 23rd, 1935, the avowant wrote the plaintiff, advising the latter that the result of advertisements for a tenant and purchaser, which had been published at the instance of both, and in response to which applicants were to apply to her, had been a failure. Negotiations followed, through which the plaintiff proposed to sell the alleys to the avowant. These negotiations also did not materialize. The plaintiff then testified to his decision to dismantle the alleys, the refusal of the avowant to permit such action on his part, and her formal demand for the rental in controversy. In the course of his testimony he further set forth that meanwhile he had neither actual nor constructive possession of the premises; that he had no key to the same; and that she never, at any time prior to her formal demand, claimed rent for the premises, but, to the contrary, that he had consented to permit the alleys to remain on the premises, under a verbal understanding with the avowant that there would be no rent charged until either the plaintiff decided to remove the alleys, or pay rent, or until

the avowant informed him that he must pay rent. Upon cross-examination it was further testified by the plaintiff that on the 28th of December, 1934, he came to Westminster to make settlement with Bowker, and first interviewed avowant, who then told him he would owe no rent until she told him to pay; that he told her of his intention to repossess the alleys, and, after detailing subsequent negotiations with Bowker, by which the repossession was amicably arranged, he identified a copy of the original agreement under which it was effected with Bowker. Thereupon the avowant offered the agreement, hereinbefore set forth. This agreement was admitted over the objection of the plaintiff, and forms the basis of the seventh exception. A discussion of the correctness of this ruling seems unnecessary. The theory of the plaintiff's case, as shown by his argument, is that the alleys, being subject to the conditional sale contract, were not distrainable; whereas that of the avowant's case is that they were distrainable, as being unencumbered property of the plaintiff, discharged from her original rental release, and therefore subject to distraint. In view of these opposing contentions, and especially in view of the stipulation in the admitted paper that the plaintiff was to be responsible for the payment of the rent on the premises from the first day of January, 1935, until he removed the alleys from the premises, its rejection would, in our opinion, have been fatal error.

(g) As no formal exception was noted in the record to the ruling of the trial court captioned in the record as "Exception No. 8," it need not be considered here.

(h) The ninth exception, being to the action of the court in sustaining an objection to a leading question, is not reviewable. In any event, substantially the same question was later asked, modified to meet the objection, and was answered.

The fifth exception is to the rejection of the plaintiff's A and B prayers, offered at the close of the avowant's case; but, inasmuch as the plaintiff thereafter proceeded with his case, the benefit of this exception was waived.

The remaining exception deals with the adverse ruling on the plaintiff's C, D, third, fifth, sixth, tenth, eleventh, twelfth, and thirteenth prayers. Section 18 of article 53 of the Maryland Code (as amended by Acts 1935, ch. 206) exempts from distress for rent goods, chattels, or other personal property purchased by the tenant under a conditional contract of sale, as defined in section 55 of article 21 of the Code (as amended by Acts 1931, ch. 402) ; and it is contended by the plaintiff that an outstanding conditional sale contract precluded the avowant from distraining upon the property under those sections, and that, in any event, the property involved could not have been distrained upon unless the plaintiff was shown to be the tenant of the avowant. The distress warrant authorized the sheriff, as bailiff, to distrain any goods or chattels found on the premises occupied by the plaintiff and Bowker, the tenant, to satisfy and pay the rent; and by virtue of it, any property, not exempt under the statute, found upon the premises, was distrainable, regardless of whether the plaintiff was the tenant. Or, as stated in *Mears v. Perine,* 156 Md. 56, 143 A. 591, 593: "It is true that goods and chattels liable to distraint are not confined to those of the tenant, but any chattels which may happen to be upon the demised premises at the time rent becomes due may be sold under distraint proceedings for payment of the rent; and this is so, whether they belong to the tenant, subtenant, or a stranger." Under the pleadings, the avowant proceeded against the original tenant and the plaintiff, who together were in actual or constructive possession of the property; and, by her avowry, the lease to Bowker, the conditional contract of sale between Bowker and the plaintiff, and the subsequent settlement or cancellation of the contract and surrender of the chattels distrained upon by the vendee to the vendor, as well as the express stipulation that, as a condition of the settlement, the plaintiff would become responsible for the rent, as hereinbefore set forth, it would seem that the rejection of the plaintiff's C prayer, which challenged the sufficiency of the proof under the pleadings, was proper.

So also was the ruling of the trial court as to the plaintiff's D prayer, for the reason that the whole evidence presented questions of fact for proper submission to the court sitting as a jury.

As it is our conclusion that the exemption statute, to which reference is hereinbefore made, was rendered inapplicable by virtue of the repossession. of the chattels by the vendor, and the cancellation of the indebtedness, it follows that the rejection of the plaintiff's third prayer, directed to the application of the statute to the instant case, was correct.

The fifth and sixth prayers raise, first, the issue that the goods were not distrainable; and, second, that the distraint was made too late. Having heretofore shown that any goods found upon the premises, not exempt by the statute, were distrainable, it seems unnecessary to further discuss this phase of the case; and inasmuch as the evidence conclusively shows the original lease between the defendant and Bowker has yet some years to run, and there is no evidence in the record tending to show its abrogation, and further that the distraint was made while this lease was in full force, and at a time when under its terms the rental claimed was overdue, we see no justification for sustaining a prayer to the effect that the distraint was made too late.

The plaintiff's tenth, eleventh, and twelfth prayers are directed to the legal effect, as between the plaintiff and the avowant, of the paper writing of December 28th, 1934, (a) because of an alleged lack of consideration passing from the avowant to either of the parties to the agreement, (b) because the avowant was not a party to said paper writing, and (c) because said paper writing was not made for her benefit, notwithstanding that she had knowledge of the existence of the instrument. As hereinbefore indicated, the distraint proceeding was one *in rem* against property found upon the premises; and it is our opinion that the prayers were improper, in that the consideration for the distraint was amply supported by the rent due at the time it was levied; and it would there-

fore seem unimportant whether the paper writing was made for the benefit of the avowant, or that she had knowledge of the same.

Finally, the thirteenth prayer of the plaintiff, which was rejected, submitted to the trial court that, if it found that negotiations for the sale of the goods and chattels distrained upon had taken place between the avowant and the plaintiff, even though they were unsuccessful, and that during the course of these negotiations no formal demand or request for the payment of rent for the premises of the avowant had been made upon the plaintiff by the avowant, and further that, if it found that the avowant meanwhile offered and endeavored to rent the premises to some one other than the plaintiff, without consulting the tenant Bowker, then the verdict should be for the plaintiff, unless the court found that such offers to rent said premises were made by the avowant as the agent of the plaintiff. It seems quite clear that negotiations between the parties to this suit for the sale of the chattels distrained upon could in no manner affect the lease with Bowker; and there is no evidence anywhere in the record tending to show that Bowker was ever released of his tenancy, or that the plaintiff was ever substituted in his place. On the contrary, the uncontradicted testimony of Bowker, in explaining the reason for his insistence that the plaintiff assume responsibility for the payment of rent for the premises from January 1st, 1935, until such time as the alleys were removed therefrom, is as follows: "I said I would not sign it unless it was satisfactory to my landlord, because I held a lease for ten years on the building, and if we signed something between ourselves, and it wasn't agreeable to the landlord, for all I knew she could come back and still collect rent from me." Further testifying, the same witness, in explaining the sale of certain chattels on the premises, other than the chattels distrained upon, which were subject to the lien of a chattel mortgage held by the avowant, stated: "I told him (the purchaser) to make the check out to Mrs. Boyd because we decided all that material would

go to Mrs. Boyd for the time being, she would hold it all until some sort of a final settlement was made. That was not taken by her specifically on account of rent; she just took it to hold against the whole transaction between us." These statements by Bowker, in our opinion, tend to show that the outstanding lease between him and the avowant was never released; and we cannot conclude that the mere fact that the avowant sought to locate a new tenant for the premises would have the effect of canceling the lease by implication. Had she secured a new tenant, before she could have entered into a contract with the latter it would have been incumbent upon her to secure a release from Bowker. It follows that the court's ruling upon this prayer must be affirmed.

For the reasons heretofore stated in reaching the conclusions upon the evidence and the prayers, we deem it unnecessary to discuss the rulings of the trial court upon the preliminary pleadings, because they involve substantially the same questions.

*Judgment affirmed, with costs to the appellee.*